IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
<u>SOUTHERN DIVISION</u>

| | |
|---|---|
| **J-RICH CLINIC, INC., d/b/a REAL PURITY,**<br><br>*Plaintiff,*<br><br>v.<br><br>**COSMEDIC CONCEPTS, INC., d/b/a PHILOSOPHY, BIOTECH, INC., and PHILOSOPHY, INC.,**<br><br>*Defendants.* | C.A. No.  02-CV-74324DT<br><br>Hon. John Corbett O'Meara<br>United States District Judge<br><br>Hon. Paul J. Komives<br>United States Magistrate Judge<br><br>FILED |
| **J-RICH CLINIC, INC., d/b/a REAL PURITY,**<br><br>*Plaintiff,*<br><br>v.<br><br>**QVC, INC.,** *et al.,*<br><br>*Defendants.* | C.A. No.  03-CV-71750DT<br><br>Hon. John Corbett O'Meara<br>United States District Judge |

**PLAINTIFF'S MOTION AND SUPPORTING MEMORANDUM UNDER
FED. R. CIV. P. 56(a), (c), and (d) FOR PARTIAL SUMMARY JUDGMENT ON
THE ISSUES OF (1) PRIORITY OF TRADEMARK USE AND OWNERSHIP,
<u>AND (2) CANCELLATION OF TRADEMARK REGISTRATION No. 2112922</u>**

Eric C. Grimm (P58990)
**LAW OFFICES OF ERIC C. GRIMM**
320 South Main Street
Second Floor
Ann Arbor, MI 48104

734.332.4900
Fax 734.332.4901

COUNSEL FOR PLAINTIFF.

## ISSUES PRESENTED

I.   *"**Remote** Good Faith User"* – Because:

(1)   The only Defendant that purportedly claims a right to use "real purity" as *its* trademark in commerce is Philosophy (in other words, all other Defendants' rights, if any, are completely derivative of Philosophy's contentions); and

(2)   Philosophy admits, as a factual matter, that it first adopted the "real purity" facial cleanser mark in *Phoenix, Arizona, in 1996*, and had no prior use of the mark anyplace in the world at any prior time; and

(3)   Plaintiff already had been selling REAL PURITY™ products into the Phoenix, Arizona, market (and elsewhere) since the 1980s, and already had established prior exclusive common-law rights in Phoenix and elsewhere; and

(4)   Therefore (setting aside the separate question whether Philosophy's adoption in Phoenix in 1996 was willful),[1] Philosophy cannot possibly have been a geographically *remote* good-faith adopter of the "real purity" mark because the place of adoption, by necessity, was not geographically remote from the geographic area in which Plaintiff had already established pre-existing rights; and

(5)   Philosophy therefore cannot have established any legitimate rights whatsoever anyplace in the world, if its place of initial adoption (and the base and center of *all* subsequent expansion) has always been in Phoenix, Arizona, which, by definition, has never been geographically *remote* from Plaintiff's pre-existing and established common-law trademark rights; then

Is Plaintiff entitled to partial summary judgment (because material facts are not in dispute) on the question whether Philosophy is unable to meet the "*remote* good faith user" test concerning its use of "real purity," in *Phoenix, Arizona, in 1996* (the place and time of Philosophy's and Cosmedic Concepts's adoption of their Infringing Mark)?

**Most Relevant Authorities:**

Emergency One, Inc. v. American Fire Eagle Engine Co., 332 F.3d 264, 271 (4th Cir. 2003).

Champions Golf Club, Inc. v. Champions Golf, 78 F.3d 1111, 1124 (6th Cir. 1996) (quoting J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS 26.06 (3rd ed. 1995)).

---

[1] Attached at Tab 1, is a brief explanation about why the evidence is likely to establish that the infringement **was** willful. This issue (contrary to unfounded aspersions previously cast by the Court) has absolutely nothing to do with "get[ting] pretty personal," but rather with controlling Sixth Circuit law (which requires "willfulness" to be considered) and a strong factual record that tends to establish willfulness by Philosophy – even in 1996.

II.     **Priority of Trademark Use:** Whether Plaintiff has common-law trademark rights senior
        to any Defendant because Plaintiff's rights arose from the public use of REAL
        PURITY™ on all product packages shipped in commerce (all over the United States, as
        well as abroad), and other advertisement and promotion, by Plaintiff and others,
        continuously from 1986 to the present – in other words, over a decade prior to
        Philosophy's 1996 adoption of its Infringing Mark, in Phoenix?

**Most Relevant Authorities:**

> Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193-1200 (11th Cir. 2001)
> (granting summary judgment in favor of common-law mark-owner on issue of "priority
> of use").

> Johnny Blastoff, Inc. v. L.A. Rams Football Co., 188 F.3d 427, 433 (7th Cir. 1999).

> Allard Enters. v. Advanced Programming Res., Inc., 146 F.3d 350, 358 (6th Cir. 1998),
> *subsequent proceeding*, 249 F.3d 564 (6th Cir. 2001).

III.    **Cancellation of Philosophy's Registration:** Now that Philosophy has conclusively
        conceded "a likelihood of confusion," *see* Transcript at 5-6, 9, 11 (June 11, 2003) (Doc.
        Ent. 81), and because Plaintiff is entitled to summary judgment on the issues of (1)
        Plaintiff's prior trademark use of REAL PURITY™ in commerce, and (2) Philosophy's
        complete inability in Phoenix, in 1996, to establish *any* concurrent rights whatsoever on
        any "remote . . . user" theory, then is Plaintiff entitled as a matter of law to have
        Philosophy's Registration No. 2112922 canceled (or, alternatively, ordered transferred to
        the Plaintiff by this Court)?

**Most Relevant Authorities:**

> 15 U.S.C. §§ 1052(d), 1064, 1119.

IV.     **Absence Of Any "Presumption" Under 15 U.S.C. § 1057:** Whether Philosophy
        (independent of the separate question of whether Philosophy's mark is subject to
        cancellation) is conclusively barred from asserting any statutory claim or presumption
        against Plaintiff under section 1057 of the Lanham Act because Plaintiff is "a person
        whose mark has not been abandoned and who, **prior** to such filing [by Philosophy in
        1996 of an application to register with the U.S. P.T.O.] – (1) has used the [REAL
        PURITY™] mark?"

**Most Relevant Authorities**

> 15 U.S.C. § 1057(c)(1).

Rule 56(a), (c), (d) Motion For Partial Summary
Judgment, *in J-Rich Clinic d/b/a REAL PURITY v.
Philosophy, Inc., C.A. No. 02-CV-74324DT*

-ii-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
<u>SOUTHERN DIVISION</u>

| | |
|---|---|
| **J-RICH CLINIC, INC., d/b/a REAL PURITY,**<br><br>*Plaintiff,*<br><br>v.<br><br>**COSMEDIC CONCEPTS, INC., d/b/a PHILOSOPHY, BIOTECH, INC., and PHILOSOPHY, INC.,**<br><br>*Defendants.* | C.A. No.  02-CV-74324DT<br><br>Hon. John Corbett O'Meara<br>United States District Judge<br><br>Hon. Paul J. Komives<br>United States Magistrate Judge |

| | |
|---|---|
| **J-RICH CLINIC, INC., d/b/a REAL PURITY,**<br><br>*Plaintiff,*<br><br>v.<br><br>**QVC, INC.,** *et al.,*<br><br>*Defendants.* | C.A. No.  03-CV-71750DT<br><br>Hon. John Corbett O'Meara<br>United States District Judge |

**PLAINTIFF'S FED. R. CIV. P. 56(a), (c), and (d) PARTIAL SUMMARY JUDGMENT MOTION ON (1) PRIORITY OF TRADEMARK USE AND OWNERSHIP, AND (2) <u>CANCELLATION OF TRADEMARK REGISTRATION No. 2112922</u>**

Plaintiff, J-Rich Clinic, d/b/a REAL PURITY, respectfully moves for partial summary judgment.  Plaintiff's evidence of "prior use" of the REAL PURITY™ mark in commerce, since 1986, is not and cannot be controverted by any <u>evidence</u>, but only by speculative and counter-factual

non-evidentiary make-believe by Defendants' counsel.[2] No genuine dispute of material fact exists as to whether Plaintiff's common-law rights to the REAL PURITY™ mark since 1986 are senior and superior to Philosophy's. Philosophy did not start using its unauthorized "real purity" mark until 1996. Therefore, summary judgment on the question of trademark priority is required. See, e.g., Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193-1200 (11th Cir. 2001) (affirming summary judgment on the issue of priority of common-law trademark rights).

Partial summary judgment is also sought on the related, focused, question whether Phoenix, Arizona, in 1996 was geographically *remote*[3] from the territory in which Plaintiff had already established trademark rights prior to 1996. The evidence is uncontroverted that Plaintiff's sales of REAL PURITY™ were not only nationwide (in addition to sales in several foreign countries) prior to and after 1996, but that Phoenix, Arizona enjoyed a particularly high volume of sales of Plaintiff's

---

[2]Plaintiff has repeatedly demanded that Philosophy's counsel withdraw false accusations of "fabrication" or "manufacture" of evidence – or, alternatively, to come forward with any evidentiary support whatsoever for Philosophy's false accusations – which accusations this Court has previously characterized as "over the top." See Transcript at 7-8 (Feb. 4, 2003) (Doc. Ent. 49); see also Letter from Eric C. Grimm to Michael K. Kelly (July 11, 2003), Tab 2. Allegations of the manufacture of evidence are breathtakingly serious and are not to be made or taken lightly. See In re Pennie & Edmonds, LLP, 323 F.3d 86, 88, 92 (2nd Cir. 2003). Plaintiff reserves the right to seek a remedy against Philosophy and its counsel if these accusations (which are not identified as "information and belief" accusations) turn out to lack evidentiary support. See FED. R. CIV. P. 11(b); Tab 2. The **right** thing to do when allegations turn out to be erroneous or without factual basis, is to come forward to the Court immediately and seek to have them corrected. Philosophy has refused to do this voluntarily.

[3]Plaintiff can prevail on this issue solely on objective, geographic, grounds ("remote") without any need to reach the other element of the standard – Philosophy's subjective mental state. The mental state of Philosophy is, of course, not a suitable subject for summary judgment. As Plaintiff has explained at length in the Opening [Proof] Brief of Appellant, at 15-22 (attached as Tab 1), and also in previously-submitted Declarations (Doc. Ent. 5, 27), Plaintiff has sufficient evidence to reach the jury on the question of whether Philosophy acted "willfully" and in "bad faith" with prior knowledge of Plaintiff's trademark rights when Philosophy started infringing in 1996. See note 1, *supra*. But for purposes of the "good faith remote user" issue, a determination on the "good faith" prong is immaterial because – as a matter of law – Phoenix was not geographically **remote** from Plaintiff's already-established territory.

genuine REAL PURITY™ products, both before and after 1996.

As a matter of law, then, Philosophy could not have been a "good faith *remote* user"of "real purity" in 1996, and neither Philosophy nor any other Defendant has any valid trademark rights based on either Philosophy's initial adoption of its Infringing Packaging in Phoenix in 1996, or any expansion of Philosophy's sales territory beyond Phoenix subsequent to that time (in other words, any expansion by Philosophy outside Phoenix was always unlawful if Philosophy's initial adoption in Phoenix in 1996 was never "geographically *remote*").

The third issue for partial summary judgment is the question of cancellation of Philosophy's Registration No. 2112922. Plaintiff respectfully points out, in the alternative, that 15 U.S.C. § 1119, also empowers this honorable Court to order said Registration transferred to the Plaintiff, instead of canceling it outright, so that Plaintiff would be established on the Principal Register as the exclusive owner of the REAL PURITY™ mark. Plaintiff respectfully prays that the Court order the Registration transferred to the Plaintiff, or, alternatively, that the Registration be canceled.

The reason that Philosophy's registration is subject to transfer or cancellation is that Philosophy has **admitted** on the record that "a likelihood of confusion" has been established. See Supporting Mem. at 1-2, *infra*. Thus, cancellation (or, alternatively, transfer) is required on the ground of 15 U.S.C. § 1052(d): "[It] [c]onsists of or comprises a mark . . . or trade name previously used in the United States by [Plaintiff] and not abandoned, as to be likely, when used on or in connection with the goods of [Philosophy], to cause confusion, or to cause mistake, or to deceive."

The fourth issue is to bar Philosophy from continuing to assert (falsely) that its registration confers any rights. Any presumptions on which Philosophy seeks to rely (i.e., claiming "nationwide" rights) are, by definition, items that **cannot** apply vis-a-vis the Plaintiff because, by plain statutory language, an explicit exception is made for "a person whose mark has not been

Rule 56(a), (c), (d) Motion For Partial Summary
Judgment, *in J-Rich Clinic d/b/a REAL PURITY v.
Philosophy, Inc., C.A. No. 02-CV-74324DT*

-3-

abandoned and who, prior to such filing [of a trademark application] – (1) has used the mark."

If this Motion for Partial Summary Judgment is granted, then only the following issues will remain for trial (again, Philosophy has affirmatively conceded "a likelihood of confusion," making a trial of this issue, or even summary judgment on "likelihood of confusion," unnecessary):

(1)     Whether Philosophy's infringement from 1996 to April 2002, was <u>willful</u> (this issue is germane to the issue of damages, and if proven, overcomes any defense by Philosophy based on *laches*, to the award of damages in the pre-April, 2002 period; Plaintiff has previously explained the case for why it is likely to establish Philosophy's willfulness at trial in the Opening [Proof] Brief of Appellant, at 15-22, attached in part at Tab 2).

(2)     Whether Philosophy's infringement from April to October 31, 2002, was willful.

(3)     Whether Philosophy's infringement from October 31, 2002 to February 4, 2003, was willful, and whether the other Defendants in the October-February time period acted willfully.

(4)     Whether all Defendants' infringement on and after February 4, 2003, was willful.

(5)     Whether QVC's infringement on and after March 4, 2003, was willful, if (hypothetically) it was not willful prior to that time;

(6)     Whether the adoption by Philosophy and other Defendants, on or about April 30, 2003, of a new mark – "purity made simple" – is confusingly similar to Plaintiff's REAL PURITY™ mark when used on retail cosmetics, and whether it creates a likelihood of confusion in violation of the Lanham Trademark Act.

(7)     Whether the "purity made simple" re-branding violates the "Safe Distance Rule"[4] because

---

[4]On April 30, 2003 (385 days after attorney Charles Chandler's April 10, 2002 C&D letter to Philosophy), when Philosophy changed its product packaging and abandoned "real purity" as the name of its cleanser, Philosophy did not actually stop infringing. Rather, its new packaging violates the "Safe Distance Rule." See Taubman Co. v. Webfeats., 319 F.3d 770, 779-80 (6th Cir. 2003) (citing Broderick & Bascom Rope Co. v. Manoff, 41 F.2d 353, 354 (6th

Defendants were already previously caught infringing.

(8)     Whether the infringement of all Defendants on and after April 30, 2003, was willful.

(9)     The amount of revenue and profit received by each Defendant, from Infringing Sales, in each

of the time-periods set forth above, for purposes of accounting and disgorgement in

accordance with 15 U.S.C. § 1117 (including treble damages);

(10)    The amount of damages the infringement has inflicted on Plaintiff;

(11)    The amount of costs and attorneys' fees incurred prosecuting this lawsuit;

(12)    Any other issues relating to the balance of equities, for permanent injunctive relief.

Such a streamlined trial will be dramatically less time-consuming than one in which the issue of "a

likelihood of confusion" of "real purity" must be tried, along with questions of priority.

Plaintiff respectfully prays for Partial Summary Judgment, narrowing the issues for trial in

the manner set forth above.

July 21, 2003

Respectfully submitted,

Eric C. Grimm (P58990)
**LAW OFFICES OF ERIC C. GRIMM**
320 South Main Street
Second Floor
Ann Arbor, MI 48104
734.332.4900
Fax 734.332.4901

COUNSEL FOR PLAINTIFF.

---

Cir. 1930)); <u>Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.</u>, 282 F.3d 23, 40-41 (1st Cir.
2002). Plaintiff does not rely only on the "Safe Distance Rule." The post-April 30 packaging
also directly infringes Plaintiff's mark, <u>see</u> 15 U.S.C. § 1125(a), because the new mark is
confusingly similar to Plaintiff's REAL PURITY™ mark, and either creates a likelihood of
confusion or perpetuates a pre-existing likelihood of confusion.

**Rule 56(a), (c), (d) Motion For Partial Summary**
**Judgment,** *in J-Rich Clinic d/b/a REAL PURITY v.*

## CERTIFICATE OF CONFERENCE

I certify that the conference requirements of Local Rule 7.1, were satisfied on Friday, July 18, 2003, and on Monday July 21, 2003, as reflected in the correspondence attached at Tab 3.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **J-RICH CLINIC, INC., d/b/a REAL PURITY,**<br><br>*Plaintiff,*<br><br>v.<br><br>**COSMEDIC CONCEPTS, INC., d/b/a PHILOSOPHY, BIOTECH, INC., and PHILOSOPHY, INC.,**<br><br>*Defendants.* | C.A. No.  02-CV-74324DT<br><br>Hon. John Corbett O'Meara<br>United States District Judge<br><br>Hon. Paul J. Komives<br>United States Magistrate Judge |
| **J-RICH CLINIC, INC., d/b/a REAL PURITY,**<br><br>*Plaintiff,*<br><br>v.<br><br>**QVC, INC.,** *et al.,*<br><br>*Defendants.* | C.A. No.  03-CV-71750DT<br><br>Hon. John Corbett O'Meara<br>United States District Judge |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S FED. R. CIV. P. 56(a), (c),
and (d) PARTIAL SUMMARY JUDGMENT MOTION ON THE ISSUES OF
(1) PRIORITY OF TRADEMARK USE AND OWNERSHIP, AND (2)
CANCELLATION OF TRADEMARK REGISTRATION No. 2112922**

As Philosophy's counsel previously have pointed out (see Transcript at 4 (Jan. 21, 2003)

(Doc. Ent. 15), Transcript at 5-6, 9, 11 (June 11, 2003) (Doc. Ent. 81) ("[T]his case boils down to

one of priority."   "We don't have [a dispute about a likelihood of confusion] here because

Philosophy took that off the table."   "This comes down to an issue of priority and nothing more."),

Rule 56(a), (c), (d) Motion For Partial Summary
Judgment, *in J-Rich Clinic d/b/a REAL PURITY v.
Philosophy, Inc.*, C.A. No. 02-CV-74324DT
Page 1 of 16

the core of this case resolves to a narrow issue – namely, the priority of adoption and use of REAL PURITY™ in commerce. Philosophy admits (and is estopped by regulatory filings from denying) that it did not adopt its junior "real purity" mark – anyplace in the world – at any time prior to 1996. See note 11, *infra*. If Plaintiff's "use in commerce" of the REAL PURITY™ mark – which "use" creates common-law trademark rights from the instant that Plaintiff first *used* the mark in public, see pages 8-11, *infra* – pre-dates 1996 (and the record establishes that Plaintiff's prior use pre-dates 1996 by a **decade** – having commenced in 1986) then Plaintiff prevails. Id. It is as simple as that.

The issue is even narrower than Philosophy has suggested. The key question of priority in this case resolves down to one point in time, in one specific geographic place – Phoenix, Arizona, in 1996, on the day that Philosophy, having "adopted" its "real purity" mark for facial cleansers without Plaintiff's permission, first **used** it in public. If Phoenix, Arizona, was not *geographically remote* from the territory of Plaintiff's prior common-law trademark rights in 1996 (and the record establishes that Plaintiff had a particularly high sales volume in greater Phoenix prior to that time), then Philosophy loses on the issue of priority everyplace, forever. See pages 11-14, *infra*.

Philosophy cannot have any trademark rights whatsoever[5] if either (1) Philosophy lacked "good faith" when it adopted its mark, **or** (2) Phoenix Arizona was not geographically **remote** from prior sales of the Plaintiff's products. See Emergency One, Inc. v. American Fire Eagle Engine Co., 332 F.3d 264, 271 (4th Cir. 2003) ("The 'innocent' or 'good-faith remote user' defense stands as an exception to the general rule that the senior user, by virtue of its prior appropriation, has superior rights in the mark over a party that subsequently begins using the mark. . . . [E]ven though a junior user is, by definition, not the first to ever use a mark, it may assert the exclusive right to use a mark

_____

[5]Courts have repeated again and again that trademark registrations confer no rights, see page 8-9, *infra*, only procedural advantages, and a registration is subject to *cancellation* if someone other than the registrant was using the mark first. Id.; note 11, *infra*.

*in a particular area* (1) if the area was "*geographically remote*" from the senior user's market <u>at the time that the junior user appropriated the mark</u> and (2) if the junior user was acting in good faith at the time."); <u>Champions Golf Club, Inc. v. Champions Golf</u>, 78 F.3d 1111, 1124 (6th Cir. 1996) ("It is clear that if the 'senior user located in one part of the United States has achieved a nationwide recognition of its symbol, then the [prior innocent user] doctrine . . . is not available as a defense for a junior user anywhere in the nation. This is because the respective uses of the contested mark are not "remote." The . . . defense applies only where the senior user's mark is *not known to customers* in a *remote* area at <u>the critical date of the junior user's first</u> good-faith <u>adoption</u> and <u>use</u>.'") (quoting J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION 26.06 (3rd ed. 1995)). In this case, the material evidence is not in dispute that Plaintiff extensively sold REAL PURITY™ products to customers in Phoenix, Arizona, prior to 1996. Thus, Plaintiff is entitled to priority everyplace, always, as a matter of law – because Philosophy was **never** "geographically remote" at the time and place of Philosophy's first adoption.

## I.    <u>Summary Judgment Standard.</u>

Summary "judgment shall be rendered forthwith if the pleadings . . . together with the [evidence] . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Rule 56(d) requires the Court, to the extent practicable, to streamline trial by granting partial summary judgment:

> [T]he court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

<u>Id.</u> Under Rule 56, the moving party bears the initial burden of informing the Court of the basis of

its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant, who must "set forth specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[T]he non-movant must show sufficient *evidence* to create a genuine issue of material fact." McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000) (emphasis added); Celotex, at 321-22; Klepper v. First Am. Bank, 916 F.2d 337, 341-42 (6th Cir. 1990). "There must be evidence on which the jury could reasonably find for the [non-movant]." Klepper, 916 F.2d at 342 (quoting Anderson, 477 U.S. at 252).

"[A]n adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 321 n.3. If the nonmoving party cannot muster sufficient *evidence* to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. Id. at 331 (emphasis added).

Thus, Philosophy and the other Defendants, as the non-movants must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586-87 (citations omitted). All *justifiable* inferences are drawn in the non-movant's favor. Anderson, 477 U.S. at 250 (emphasis added). But only if "reasonable minds could differ as to the import of the evidence" should Plaintiff be denied summary judgment. See Anderson, 477 U.S. at 255 (emphasis added). When the record taken as a whole cannot "lead a rational trier of fact to find for the non-moving party," there "is no genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 586-87 (citations omitted).

Here, the evidentiary record supports but one conclusion – namely, that the Plaintiff was the first to use REAL PURITY™ as a trademark on cosmetics packages sold in commerce, and that

Page 4 of 16

Rule 56(a), (c), (d) Motion For Partial Summary
Judgment, in J-Rich Clinic d/b/a REAL PURITY v.

Plaintiff was the first to use the REAL PURITY™ mark in the Greater Phoenix market. Plaintiff was first to establish common-law rights in the REAL PURITY™ mark, and Plaintiff's geographic territory in which that mark was used included Phoenix, Arizona, <u>long prior</u> to the time that Philosophy, in Phoenix, in 1996, started using Philosophy's junior and infringing mark on its facial cleanser. Thus, since the evidence establishes that Plaintiff was both first "in commerce" and first in *Phoenix*, Plaintiff is entitled to prevail as a matter of law.

## II.   <u>Additional Discovery Is Unnecessary.</u>

Undoubtedly, Philosophy is likely to cry "Rule 56(f)," and ask for additional discovery. But if they do so, Philosophy, other Defendants, and their counsel, will thereby expose themselves to Rule 11 sanctions. <u>See</u> FED. R. CIV. P. 11(b)(3), (4) (averments and denials in Answer represent certification that "the allegations and other factual contentions *have evidentiary support* or, <u>if specifically so identified</u>, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."). The Answers of Philosophy (Doc. Ent. 76) and of other named Defendants (No Docket No.), instead of relying on "information and belief" allegations about priority, affirmatively assert that <u>present evidentiary support</u> is available for Defendants' allegations that Philosophy has priority over Plaintiff. What this means is that either (1) Philosophy and other Defendants presently have the evidentiary wherewithal to back up their allegations <u>without</u> additional discovery, or (2) Defendants do not have the evidence they claim to have, and by bluffing, deserve to be sanctioned because their allegations lack present evidentiary foundation. FED. R. CIV. P. 11(b), (c). If any Defendant requires discovery, then it should have filed "information and belief" pleadings instead of certifying that it had a present evidentiary basis for its position. <u>Id.</u>

Moreover, Philosophy's lawyers repeatedly have asserted to the Court that "[b]oth the Dykema firm and my firm, Snell & Wilmer, we have a longstanding practice of adhering to the

highest standards of – of professional conduct." E.g., Transcript at 44 (June 11, 2003) (Doc. Ent. 81). But is it really consistent with such high "standards of professional conduct" to accuse litigation opponents of "fabrication" and "manufacture" of evidence – a very serious charge amounting to a felony – without an evidentiary basis for the accusation? See Tab 2; In re Pennie & Edmonds, LLP, 323 F.3d 86 (2nd Cir. 2003). Is it really consistent with "hig[h] standards" to submit declarations by a witness (namely, Mark Carlino), whose role routinely flip-flops in different tribunals between the inconsistent poles of (1) a completely uninvolved basketball coach with no role whatsoever in Philosophy, and (2) an absolutely indispensable key member of management personnel (General Counsel), to whom TTAB correspondence must be addressed, or Philosophy cannot possibly be expected to meet its procedural deadlines? Is it really consistent with the "highest standards" to bluff that one has present evidentiary support for alleging that Philosophy used REAL PURITY™ before Plaintiff did – but to turn around and demand "discovery" when the bluff is called, requiring counsel to turn over the alleged evidence immediately? It is, of course, the Court's decision to make – whether these actions are consistent with the "highest standards."

Ultimately, it will be Philosophy's burden under Rule 56(f), to demonstrate that it can, if given additional time, gather evidence that is not merely cumulative and redundant of what Plaintiff has already placed in the record. "The burden of establishing the need for further discovery rests upon the party advancing the request." Jocham v. Tuscola County, 239 F. Supp. 2d 714, 734-35 (E.D. Mi. 2003) (Lawson, J.) (citing Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc., 280 F.3d 619, 627 (6th Cir. 2002), and United States v. Miami Univ., 294 F.3d 797, 816 (6th Cir. 2002)); see also Elvis Presley Enters. v. Elvisly Yours, Inc., 936 F.2d 889, 893 (6th Cir. 1991) (court properly denied trademark defendant discovery). Philosophy cannot meet this burden.

In this case, Philosophy's counsel asked for discovery on an "expedited basis" months ago

Page 6 of 16

Rule 56(a), (c), (d) Motion For Partial Summary Judgment, in J-Rich Clinic d/b/a REAL PURITY v.

in January, and Magistrate Judge Komives granted their request. See Transcript at 11-12 (Jan. 21, 2003) (Doc. Ent. 15). Plaintiff already has provided copious documentation (and made additional documents available for inspection and copying) as part of Plaintiff's initial disclosures (some of which material already has been presented in court filings). Philosophy was reminded again in February, and in subsequent months, that it was invited and encouraged to take discovery. See Doc. Ent. 31, 32, 35. It is Philosophy's own fault if it has completely failed to take advantage of these opportunities. E.g., note 9, infra. It is Philosophy's own fault if it elected to waste the Court's time with repeated "stay" motions based on theories that were contrary to law (as Magistrate Judge Komives repeatedly recognized). See Doc. Ent. 62, 73. It is Philosophy's own fault if, in pursuit of transparent gamesmanship, Philosophy's counsel in July, 2003, purported to serve discovery requests that were captioned "In the TTAB" only and that failed to be captioned in this lawsuit.

Customarily, when a party asserts an eleventh-hour claim that, "well, now I need discovery," as an excuse for delaying a major court decision (such as dismissal of a claim or suit,[6] entry of summary judgment,[7] or entry of a preliminary injunction),[8] that party must carry a heavy burden of

---

[6]See Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 946-47 (7th Cir. 2000), cert. denied, 121 S. Ct. 1406 (U.S. 2001) (No. 00-1308); Jazini v. Nissan Motor Co., 148 F.3d 181, 185-86 (2nd Cir. 1998); Noonan v. Winston Co., 135 F.3d 85, 94-95 (1st Cir. 1998); Theunissen v. Matthews, 935 F.2d 1454, 1465 (6th Cir. 1991), see also Ellis v. Fortune Seas, Ltd., 175 F.R.D. 308, 312 (S.D. Ind. 1997); Poe v. Babcock Int'l, plc, 662 F. Supp. 4, 7 (M.D. Pa. 1985) ("It would be inappropriate for this court to allow plaintiff to conduct a fishing expedition in order to construct a basis for jurisdiction."); Caribbean Broadcasting Sys., Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1089-90 (D.C. Cir. 1998); McLaughlin v. McPhail, 707 F.2d 800, 806-07 (4th Cir. 1983); Chrysler Corp v. Fedders Corp., 643 F.2d 1229, 1239-40 (6th Cir. 1981); Greenspun v. Del E. Webb Corp., 634 F.2d 1204, 1208 n.5 (9th Cir. 1980); Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2nd Cir. 1975); H.L. Moore Drug Exch., Inc. v. Smith, Kline & French Labs., 384 F.2d 97, 97-98 (2nd Cir. 1967); Hansen v. Neumuller GmbH, 163 F.R.D. 471, 474-76 (D. Del. 1995); International Terminal Operating Co., Inc. v. Skibs A/S Hidlefjord, 63 F.R.D. 85, 87-88 (S.D.N.Y. 1973).

[7]United States v. Miami Univ., 294 F.3d at 815-16 (permanent injunction case) ("This court requires [a] party [seeking additional discovery to] do so in good faith by affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him, by discovery or

Rule 56(a), (c), (d) Motion For Partial Summary Judgment, in J-Rich Clinic d/b/a REAL PURITY v.
Page 7 of 16

showing two things: (1) that the party was reasonably diligent in seeking the discovery in the first

place, and did not put off its obligations until the eleventh hour;[9] and (2) that the discovery is

actually likely to accomplish something material.[10]   Defendants have failed to meet either burden.

The bottom line is that Defendants' anticipated fishing expedition is unlikely to accomplish

anything other than to run up Plaintiff's bills.  Accordingly, summary judgment is proper.

### III.   Plaintiff Was First To Use the REAL PURITY™ Mark In Commerce And First To Establish Trademark Rights.

"It is axiomatic in trademark law that the standard test of ownership is priority of use."[11]

Sengoku Works Ltd. v. RMC Int'l. Ltd., 96 F.3d 1217, 1219 (9th Cir. 1996) (emphasis added)

---

other means, to rebut the movant's showing of the absence of a genuine issue of fact.'"); accord
Good v. Ohio Edison Co., 149 F.3d 413, 422 (6th Cir. 1998); see also Abercrombie & Fitch
Stores, Inc., 280 F.3d at 627 (FED. R. CIV. P. 56(f) affidavit must "detai[l] the discovery needed,"
in order to justify delay in granting summary judgment); Skousen v. Brighton High School, 305
F.3d 520, 527 (6th Cir. 2002) ("[the plaintiff did not] file an affidavit, as required by Federal Rule
of Civil Procedure 56(f), explaining her failure or inability to file her affidavits in opposition").

[8]See PACCAR, Inc. v. Telescan Techs., L.L.C., 319 F.3d 243(6th Cir. 2003) ("We have
recognized that the district court, upon a motion for preliminary injunction, *must* make a
decision based upon incomplete factual findings and legal research.") (emphasis added); Blue
Cross & Blue Shield Mut. of Oh. v. Blue Cross & Blue Shield Ass'n, 110 F.3d 318, at n.4 (6th
Cir. 1997) (court properly entered preliminary injunction despite request by opposing party at
injunction hearing for additional discovery); Elvisly Yours, *supra.*

[9]E.g., Theunissen, 935 F.2d at 1465 ("Theunissen had ample time prior to the hearing on
the dismissal motion to conduct the discovery necessary . . . yet did not pursue discovery until
the day of the hearing itself.  Moreover, the district judge modified his denial of discovery by
soliciting authority from Appellant's counsel in support of further discovery. Counsel offered no
cases in reply to the court's request, nor did he offer any explanation for this lapse.").

[10]See, e.g., United States v. Miami Univ., 294 F.3d at 815-16;  Good, 149 F.3d at 422;
Elvis Presley Enters. v. Elvisly Yours, Inc., 936 F.2d 889, 893 (6th Cir. 1991).

[11]A nonregistrant can rebut the statutory presumption of a federal trademark registrant's
alleged priority by showing that the registrant had not established valid ownership rights in the
mark at the time of registration — in other words, if the non-registrant can show that he used the
mark in commerce first, then the registration may be invalidated.  Sengoku Works Ltd., 96 F.3d
at 1220.  In this case, Philosophy's filing of an "ITU" ("intent to use") application in 1996,
estops Philosophy from asserting that it acquired any trademark rights prior to 1996.

Rule 56(a), (c), (d) Motion For Partial Summary
Judgment, *in J-Rich Clinic d/b/a REAL PURITY v.*
Page 8 of 16

("Sengoku first affixed the Keroheat mark to its heaters in 1982, at least two years before RMC began distributing Keroheat heaters. RMC's federal registration of the mark was not acquired until 1992, and RMC claimed it first used the mark in commerce in 1985.") "Federal registration of a mark does not establish ownership rights in the mark; rights in a registered mark are acquired through actual use, just as for unregistered marks." Emergency One, Inc. v. American Fire Eagle Engine Co., 332 F.3d 264, 267 n.1 (4th Cir. 2003) (citing Homeowners Group, Inc. v. Home Mktg. Specialists, Inc., 931 F.2d 1100, 1105 (6th Cir. 1991)).

Under common law, trademark ownership rights are "appropriated *only* through actual prior use in commerce." Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001) (emphasis added) (quoting Tally-Ho, Inc. v. Coast Community College Dist., 889 F.2d 1018, 1022 (11th Cir. 1989)). "In the absence of [an owner's] registration, rights to a mark traditionally have depended on the very same elements that are now included in the statutory definition: [T]he bona fide use of a mark in commerce that was not made merely to reserve a mark for later exploitation." Allard Enters., Inc. v. Advanced Programming Res., Inc., 146 F.3d 350, 357 (6th Cir. 1998), *later proceeding*, 249 F.3d 564 (6th Cir. 2001).

In a key ruling, the Sixth Circuit has held that "The statutory definition of 'use in commerce' as 'the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a mark,' [15 U.S.C.] § 1127 . . . [is] entirely consistent with the traditional rules governing common-law ownership of trademarks." Allard, 146 F.3d at 357; accord Planetary Motion, Inc., 261 F.3d at 1196 & nn. 10-12 (acknowledging that governing standard merely requires some public use that is more than "*de minimis*," and that actual sales are not even required). Thus, the Sixth Circuit has held explicitly that the standard governing common-law marks is the same as the standard recognized by the Fifth Circuit in Blue Bell, Inc. v. Farah Manufacturing Co., Inc., 508

Rule 56(a), (c), (d) Motion For Partial Summary
Judgment, *in J-Rich Clinic d/b/a REAL PURITY v.*

F.2d 1260 (5ᵗʰ Cir. 1975). See Allard, 146 F.3d at 357 (citing Blue Bell). "[O]wnership of a trademark accrues when goods bearing the mark are placed on the market." Blue Bell, at 1265.

Of course, "[s]ecret, undisclosed *internal* shipments are generally inadequate to support the denomination 'use.'" Id. at 1265 (emphasis added). But this case does not involve "secret, undisclosed internal shipments." Quite the contrary, the REAL PURITY™ mark has been used conspicuously and in public by the Plaintiff – and goods physically bearing the mark have been advertised and shipped all over the United States, either directly to end-users, or to independent distributors for re-sale to end-users – continuously since 1986. See Declaration of Dr. Richard Easterling (July 20, 2003), Tab 4. The evidence in this case clearly shows that the Plaintiff's use of the REAL PURITY™ mark since 1986 – in all advertisements, and affixed to every single unit of product sold in commerce all over the United States – has been deliberate and continuous, not sporadic, transitory, or casual. See id. ¶¶ 15, 1-20; Declaration of Dr. Richard Easterling ¶¶ 3-6, 9-11, 18, 38-45 & Exhs. 1, 2, 9, 10 (Dec. 26, 2002) (Doc. Ent. 7); Supplemental Decl. of Dr. Richard Easterling, ¶¶ 13-20, 24-52, 54-56, 62-70, 73-79 & Exhs. 2-5, 9-37, 39-41, 47-54, 56-61 (Jan. 29, 2003) (Doc. Ent. 27); Declaration of Jennifer Darr ¶¶ 3-4, 7, 13-19 (Jan. 24, 2003) (Doc. Ent. 20); Declaration of Rev. Nancy Summers ¶¶ 4-13 (Jan. 27, 2003) (Doc. Ent. 18); Declaration of James M. Summers, Ph.D. ¶¶ 4-13 (Jan. 27, 2003) (Doc. Ent. 19); Declaration of Bonnie Nusz ¶¶ 3-4, 7-8, 17-18 (Jan. 24, 2003) (Doc. Ent. 21); Declaration of Pamela Hill ¶¶ 4, 8, 19 (Jan. 24, 2003) (Doc. Ent 22); Declaration of Ann Fisk ¶¶ 3-7, 9-10 (Jan. 23, 2003) (Doc. Ent. 23); Declaration of Clinton Meyering ¶¶ 4-8. 14 (Jan. 27, 2003) (Doc. Ent. 26).

In short, common-law ownership of a mark "may be established even if the first uses are not extensive and do not result in deep market penetration or widespread recognition." Circuit City Stores, Inc. v. CarMax, Inc., 165 F.3d 1047, 1055 (6ᵗʰ Cir. 1999) (citing Allard, at 358). In Allard:

[t]he evidence before the Court showed that the [common-law owner] had used the service mark "on at least one fax, on at least one resume, and in numerous [oral] solicitations" during the period before the [opponent's] registration. [Allard, 146 F.3d] at 359. Although the Allard Court found that the [common-law owner's] use of the service mark was not "high-volume," it was "consistent and continuous" and thus sufficient to establish a right of prior ownership. Id. The Court also recognized that the [owner's] use of the service mark was "sufficiently public to qualify for protection" since there was evidence that several . . . potential clients . . . associated the mark with the [owner's] services. Id.

Circuit City, at 1055. Exactly as in Allard, the Plaintiff since 1986 has used the REAL PURITY™ mark "pervasively in all their commercial dealings." Id. Obviously, this extensive and continuous use, is and was not merely to "reserve" a mark for future use, but qualifies as commercial and public use of the mark to establish widespread ownership rights. "[E]ven a single use in trade may sustain trademark rights if it is followed by continuous commercial utilization." Allard, 146 F.3d at 357.

Plaintiff has established priority of use and is entitled to summary judgment on this issue unless Philosophy can come up with evidence that Philosophy used "real purity" in commerce **prior** to 1986. Id.; see also Planetary Motion, Inc., 261 F.3d at 1193-1200; Johnny Blastoff, Inc. v. L.A. Rams Football Co., 188 F.3d 427, 433 (7th Cir. 1999). If Philosophy cannot come forward with such controverting evidence in admissible form, then Plaintiff is entitled to summary judgment on the issue of priority of Plaintiff's trademark rights. Planetary Motion, at 1193-1200.

### IV.   Philosophy Has No Trademark Rights At All Because Philosophy Was Not Geographically *Remote* From Plaintiff's Sales Territory At The Time Philosophy Adopted Its Junior Mark In *Phoenix* In 1996.

In order for Philosophy, as the junior adopter of "real purity" as a mark for cosmetics, to have any rights at all, Philosophy has the burden of establishing two elements: (1) that Philosophy's adoption of the mark was geographically remote from the Plaintiff's pre-existing territory in which sales of genuine REAL PURITY™ products had been made, and (2) Philosophy's adoption of its junior mark was made in complete ignorance of Plaintiff's rights. If either of these two elements

is not established, then Philosophy has no geographic base for any rights in Phoenix and cannot

expand anyplace else. See Emergency One, Inc., 332 F.3d at 271 ("[E]ven though a junior user is,

by definition, not the first to ever use a mark, it may assert the exclusive right to use a mark *in a*

*particular area* (1) if the area was "*geographically remote*" from the senior user's market_at the

time that the junior user appropriated the mark and (2) if the junior user was acting in good faith at

the time."); Champions Golf Club, Inc., 78 F.3d at 1125 (quoting J. THOMAS MCCARTHY,

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION 26.06 (3rd ed. 1995)).

   As the Fourth Circuit recently explained, see 332 F.3d at 271-73, the "remote good faith

user" doctrine (on which Philosophy bears the burden of proof for both elements, id. at 271), derives

from two Supreme Court decisions from the turn of the last century – the *Tea Rose* case, and the

*Rectanus* case. Emergency One, Inc., 332 F.3d at 271 (citing Hanover Star Milling Co. v. Metcalf,

240 U.S. 403 (1916) ("*Tea Rose*" case); United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90

(1918); and National Ass'n for Healthcare Communications, Inc. v. Central. Ark. Area Agency on

Aging, Inc., 257 F.3d 732, 735 (8th Cir. 2001), to trace the origin of the "remote user" doctrine).

   The "remote user" doctrine tends to arise in relation to businesses or industries that are, by

nature, geographically limited in scope – such as restaurant businesses. See, e.g., Spartan Food Sys.,

Inc. v. HFS Corp., 813 F.2d 1279 (4th Cir. 1987) (addressing geographic scope of "QUNICY's"

restaurant mark in Virginia); Armand's Subway, Inc. v. Doctor's Assocs., Inc., 604 F.2d 849, 849

(4th Cir. 1979). The classic example, of course, is that of competing "Tea Rose" marks used on

packages of milled wheat flour.  Hanover Star Milling Co. v. Metcalf, 240 U.S. 403 (1916). In the

Tea Rose case, an Ohio company had been selling flour under the "Tea Rose" brand for many years,

while another company in Illinois had separately started selling flour under its own "Tea Rose"

brand name – particularly in the states of Alabama, Georgia, and Florida. The Ohio company had

Rule 56(a), (c), (d) Motion For Partial Summary
Judgment, in J-Rich Clinic d/b/a REAL PURITY v.
Philosophy, Inc. C.A. No. 02-CV-74324DT
Page 12 of 16

sold its flour particularly in the northeast region of the United States – in Cleveland, Boston, and Pittsburgh – but not in Illinois, and not in the Southeast.   Southeastern sales by the Ohio company were under different brand names – "Eldean Patent" and "Trojan Special."   Although the Illinois company did not adopt the "Tea Rose" brand name until 13 years after the Ohio company, its place of adoption was geographically remote from the Ohio company's sales, and subsequent sales in the Southeast were also geographically remote from the northeastern geographic region in which the Ohio "Tea Rose" flour had been sold.   Importantly, the initial adoption by the Illinois company of its mark was proven to have been "in good faith, without knowledge or notice that the name 'Tea Rose' had been adopted or used by the [Ohio] Allen & Wheeler firm or by anybody else." 240 U.S. at 410.   Under the circumstances, the junior Illinois company – as a "good faith remote user," was able to expand its territory into the Southeast, because the Ohio Allen & Wheeler firm (senior user) had not used the 'Tea Rose' mark in the Southeast. Id. at 411-24.

However, this is not such a case because the **initial place of adoption** and first public "use" of Philosophy's junior "real purity" mark was - by necessity – not *remote* from the Plaintiff's already-established sales territory.   Thus, except for measuring damages,[12] the issue of whether

_____

[12]Philosophy's own counsel, in a published article in the Phoenix Business Journal, candidly admits that "lack of knowledge of the prior user's trademark rights is *no defense* [for] trademark infringement." See Michael K. Kelly, *How Does a Business Trademark Their Name?*, THE PHOENIX BUS. J. (Jan. 20, 2000) (emphasis added).   Thus, "Although trademark rights arise through use, and registration is neither necessary nor required, a business is well advised to perform some level of investigation before simply adopting a trademark, company name, or the like.   In particular, it is important to ascertain whether other parties may have superior rights in a mark.   Then a business can avoid a significant investment in a trademark, and its associated products/services, only to be forced to adopt a new trademark and marketing strategy in the event someone else has already established rights in that trademark." Id.   Moreover, when "a company [like Philosophy asserts] trademark rights [that are] submissive to the rights of another who uses the same mark or a similar mark for similar goods or services but began at an earlier date . . . the "senior" user's trademark rights may be superior to the "junior" user's rights.   In this case, the junior user can expect a "cease and desist" letter and in this regard, lack of knowledge of the prior user's trademark rights is no defense [sic.] trademark infringement."

Rule 56(a), (c), (d) Motion For Partial Summary
Judgment, in J-Rich Clinic d/b/a REAL PURITY v.
Philosophy, Inc., C.A. No. 02-CV-74324DT
Page 13 of 16

Philosophy's adoption was willful, or in "good faith," has no bearing here. If Philosophy's first public "use" was not **geographically remote** from Plaintiff's existing sales territory, then Philosophy cannot establish rights anywhere, because its initial base of expansion, geographically, is and always has been a place where "real purity" is off-limits for anyone but Plaintiff.

Ultimately, the evidence that Plaintiff had prior and widespread use of REAL PURITY™ in Phoenix, Arizona, for many years prior to 1996, is strong and uncontroverted. Declaration of Dr. Richard Easterling, ¶¶ 1-20 (July 20, 2003), Tab 4; Declaration of Dr. Richard Easterling ¶¶ 38-45 (Dec. 26, 2002) (Doc. Ent. 7); Supplemental Decl. of Dr. Richard Easterling, ¶¶ 66, 68-69, 73, 76-77, 79-89 & Exhs. 50, 52-53, 56, 59-60 (Jan. 27, 2003) (Doc. Ent. 27); Declaration of Jennifer Darr ¶¶ 15-18 (Jan. 24, 2003) (Doc. Ent. 20); Declaration of Clinton Meyering ¶¶ 5-8, 14 (Jan. 27, 2003) (Doc. Ent. 26). Therefore, because Philosophy is unable to controvert Plaintiff's evidence that Plaintiff's REAL PURITY™ mark already enjoyed seniority in Phoenix, in 1996, Plaintiff is entitled to summary judgment on this issue, and moreover, necessarily has universal seniority to Philosophy everyplace in the whole world.

**V.     15 U.S.C. § 1057(c)(1) Also Bars Any Reliance By Philosophy
On Its Registration to Establish Any Rights.**

Again, "Federal registration of a mark does not establish ownership rights in the mark; rights in a registered mark are acquired through actual use, just as for unregistered marks." Emergency One, Inc., 332 F.3d at 267 n.1 (citing Homeowners Group, Inc., 931 F.2d at 1105); see also id. at 272 n.4. In this instance, as a matter of law, Philosophy has no "nationwide" right or even any "nationwide" presumption of any right to use because of the explicit limitation set forth in 15 U.S.C. § 1057(c). Philosophy's 1996 application for a trademark registration does not establish any "presumption" of nationwide priority against Plaintiff because Plaintiff used the REAL PURITY™ mark in commerce **before** Philosophy filed its 1996 application. Section 1057(c) says that,

Rule 56(a), (c), (d) Motion For Partial Summary
Judgment, in J-Rich Clinic d/b/a REAL PURITY v.
Philosophy, Inc., C.A. No. 02-CV-74324DT.
Page 14 of 16

"[c]ontingent on the registration of a mark on the principal register . . . the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect, on or in connection with the [specified] goods or services," but that this "constructive use" is subject to an important exception: *"except for a person whose mark has not been abandoned and who, prior to such filing - (1) has used the mark."* Plaintiff's 1986 use of REAL PURITY™, and continuous use thereafter, falls squarely within the statutory exception. Plaintiff is therefore entitled to summary judgment on this issue as well.

## CONCLUSION

For the reasons set forth above, partial summary judgment should be granted for the Plaintiff and Philosophy's registration No. 2112922 should immediately be ordered transferred to Plaintiff (as the senior and longstanding owner of the mark on a nationwide and, indeed, international basis). Or, alternatively, the Registration should be canceled forthwith without further ado.

Respectfully submitted,

July 21, 2003

Eric C. Grimm (P58990)
**LAW OFFICES OF ERIC C. GRIMM**
320 South Main Street
Second Floor
Ann Arbor, MI 48104
734.332.4900
Fax 734.332.4901

COUNSEL FOR PLAINTIFF.

## CERTIFICATE OF SERVICE

I certify that the foregoing Rule 56 Motion for Partial Summary Judgment and Supporting Memorandum, was served on all counsel of record by first class mail, postage prepaid, or by more expeditious means, on Tuesday, July 22, 2003. The Motion was also supplied by email on Monday, July 21, 2003.