## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## <u>SOUTHERN DIVISION</u>

**J-RICH CLINIC, INC., d/b/a**
    **REAL PURITY,**

        *Plaintiff,*

v.

**COSMEDIC CONCEPTS, INC.,**
    **d/b/a PHILOSOPHY,**
    **BIOTECH, INC., and**
    **PHILOSOPHY, INC.,**

        *Defendants.*

C.A. No.  02-CV-74324-PJK

Hon. John Corbett O'Meara
United States District Judge

Hon. Paul J. Komives
United States Magistrate Judge

**J-RICH CLINIC, INC., d/b/a**
    **REAL PURITY,**

        *Plaintiff,*

v.

**QVC, INC.,** *et al.*,

        *Defendants.*

C.A. No.  03-CV-71750-PJK

Hon. John Corbett O'Meara
United States District Judge

Hon. Paul J. Komives
United States Magistrate Judge

### PLAINTIFF'S CROSS-MOTION AND SUPPORTING MEMORANDUM FOR (1) PARTIAL SUMMARY JUDGMENT, ON DAMAGES, UNDER 15 U.S.C. § 1117(a); (2) PARTIAL SUMMARY JUDGMENT ON AN ACCOUNTING OF PROFITS; AND (3) APPOINTMENT OF A SPECIAL MASTER UNDER FED. R. CIV. P. 53,  TO <u>DETERMINE THE *AMOUNT* OF DAMAGES AND PROFITS</u>

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v.*
*Philosophy, Inc., C.A. No. 02-CV-74324DT.*

Eric C. Grimm (P58990)
**CALLIGARO & MEYERING, P.C.**
20600 Eureka Road
Suite 900
Taylor, MI 48180
734-283-2727
Email: eric.grimm@cyberbrief.net

**COUNSEL FOR PLAINTIFF,
J-RICH CLINIC, INC., d/b/a
REAL PURITY**

Douglas Seitz, Esq.
Sid Leach, Esq.
Laura Zeman, Esq.
Cynthia Pilotte, Esq.
**SNELL & WILMER, LLP**
400 East Van Buren
One Arizona Center
Phoenix, AZ 85004-2202
602-382-6000


Herschel P. Fink, Esq.
Honigman, Miller, Schwartz & Cohn
660 Woodward Avenue
Suite 2290
Detroit, MI 48226-3583
313-465-7000

**COUNSEL FOR DEFENDANTS
PHILOSOPHY, INC., BIOTECH,
INC., COSMEDIC CONCEPTS, INC.,
d/b/a PHILOSOPHY, QVC, INC.,
TARGET, INC, d/b/a MARSHALL
FIELD'S, DRUGSTORE.COM, INC.,
NORDSTROM, INC., and SEPHORA**.

-ii-

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v.*
*Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

## ISSUES PRESENTED

I.     On and after April 10, 2002,[1] and prior to February 4, 2003, is the Plaintiff, J-Rich Clinic, Inc., entitled under 15 U.S.C. § 1117(a), to an award of damages sustained as a result of the conscious and deliberate choice, by Philosophy, Inc., its senior management, and General Counsel, to continue infringing Plaintiff's trademark?

II.    On and after April 10, 2002, and prior to February 4, 2003, is the Plaintiff, J-Rich Clinic, entitled under 15 U.S.C. § 1117(a), to an accounting of Philosophy's profits, on account of the conscious and deliberate choice, by Philosophy, Inc., its senior management, and General Counsel, to continue infringing Plaintiff's trademark?

III.   Due to the difficult and the time-consuming nature of the accounting, should a *special master* be appointed, as authorized by 15 U.S.C. § 1117(a) ("The court shall assess such profits and damages ***or cause the same to be assessed under its direction***"), and FED. R. CIV. P. 53 (authorizing appointment when there is "[a] need to perform an accounting or resolve a difficult computation of damages")?

IV.    On and after February 4, 2003, and prior to April 30, 2003,[2] is the Plaintiff, J-Rich Clinic, Inc., entitled under 15 U.S.C. § 1117(a), to an award of damages sustained as a result of the conscious and deliberate choice, by Philosophy, Inc., its senior management, and General Counsel, to continue infringing Plaintiff's trademark?

V.     On and after February 4, 2003, and prior to April 30, 2003, is the Plaintiff, J-Rich Clinic, entitled under 15 U.S.C. § 1117(a), to an accounting of Philosophy's profits, on account of the conscious and deliberate choice, by Philosophy, Inc., its senior management, and General Counsel, to continue infringing Plaintiff's trademark?

VI.    On and after March 4, 2003, is the Plaintiff, J-Rich Clinic, Inc., entitled under 15 U.S.C. § 1117(a), to an award of damages sustained as a result of the conscious and deliberate choice, by QVC, Inc., its senior management, and General Counsel, to continue infringing Plaintiff's trademark?

---

[1]A genuine dispute about the material facts exists, in the time period from March 21, 1996, to April 10, 2002. Neither party is entitled to summary judgment on (1) damages, or (2) an accounting of profits in the 1996-2002 time-frame. However, depending on how this Motion is resolved, Plaintiff may well be willing to waive its money claims from the period prior to April 10, 2002, in order to streamline the proceedings and accelerate the resolution of this case (we have not yet, however, waived anything, or made any decisions, one way or the other).

[2]Plaintiff reserves the right to move, separately, for summary judgment on the "*Safe Distance Rule*" and the continued violation by all Defendants of the Lanham Trademark Act, on and after April 30, 2003. However, those issues are beyond the scope of this Motion.

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v. Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

-iii-

VII.    On and after March 4, 2003, is the Plaintiff, J-Rich Clinic, entitled under 15 U.S.C. § 1117(a), to an accounting of QVC's profits, on account of the conscious and deliberate choice, by QVC, Inc., its senior management, and General Counsel, to continue infringing Plaintiff's trademark?

VIII.   On and after April 28, 2003, is the Plaintiff, J-Rich Clinic, Inc., entitled under 15 U.S.C. § 1117(a), to an award of damages sustained as a result of the conscious and deliberate choice, by the other Defendants (Target, Nordstrom, Sephora, and Drugstore.com), their senior management, and General Counsel, to continue infringing Plaintiff's trademark?

IX.     On and after April 28, 2003, is the Plaintiff, J-Rich Clinic, Inc., entitled under 15 U.S.C. § 1117(a), to an accounting of the other Defendants' profits, on account of the conscious and deliberate choice, by the other Defendants (Target, Nordstrom, Sephora, and Drugstore.com), including
senior management, and General Counsel, to continue infringing Plaintiff's trademark?

## MOST RELEVANT AUTHORITIES

15 U.S.C. § 1117(a) (emphasis added):

(a) Profits; damages and costs; attorney fees

When a violation of ***any right*** . . . under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title,[3] shall have been established in any civil action arising under this chapter, the plaintiff ***shall be entitled***, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, *to recover*

(1)    defendant's profits,

(2)    any damages sustained by the plaintiff, and

(3)    the costs of the action.

---

[3]Plaintiff has formally dropped all claims based on 15 U.S.C. § 1125(c) (trademark dilution), and therefore, under the plain language of the statute, Plaintiff's demonstration of a violation of section 1125(a) is all that is required (as any mandatory prerequisite) to trigger damages and an accounting of profits. That requirement has been satisfied. A showing of "willfulness" is not mandatory or required. Wynn Oil Co. v. American Way Serv. Corp., 943 F.2d 595, 606-07 (6th Cir. 1991).

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v. Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

The court ***shall assess such profits and damages*** or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

*Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 606-07 (6th Cir. 1991) (holding that it is legal error for a district court to *fail* to award damages and an accounting of profits – against an infringer who keeps on infringing, even after being placed on actual notice of the senior owner's trademark rights, and after receiving written instructions from the mark-owner, to stop):

- "[An] intent to infringe can be shown by circumstantial evidence." Id. at 603 (later re-iterated by the Sixth Circuit in Champions Golf Club, Inc. v. Champions Golf, 78 F.3d 1111, 1121 (6th Cir. 1996));

- "Understandably, courts have held that use of a mark with knowledge of another's prior use of the mark supports an inference of intentional infringement." Wynn, at 603 (citing cases);

- "[An] intent to deceive [the] public ***will be presumed*** from continued use after attaining knowledge of another's legal mark" Id. at 603 & n.5 (emphasis added) (quoting Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 119 F.2d 316, 324 (6th Cir. 1941), *rev'd on other grounds*, 316 U.S. 203, 204-05 (1942));

- "The district court's hesitancy [to award damages and an accounting of profits] appears to be in contravention of the statutory directive that subject to certain exceptions which do not apply in this case, "the plaintiff shall be *entitled . . . to recover*" any profits defendant gained by the infringement. 15 U.S.C. § 1117(a)." (emphasis in original);

- "As explained by the Seventh Circuit:

> The Lanham Act specifically provides for the awarding of profits in the discretion of the judge subject only to principles of equity. . . . "The trial court's primary function is to make violations of the Lanham Act unprofitable to the infringing party." Other than general equitable considerations, there is no express requirement that the parties be in direct competition or that the infringer willfully infringe the trade dress to justify an award of profits. Profits are awarded under different rationales including unjust enrichment, deterrence, and compensation.

> Roulo v. Russ Berrie & Co., 886 F.2d 931, 941 (7th Cir. 1989) (citations omitted), cert. denied, ___ U.S. ___ (1990)."

> Wynn, at 606-607 (quoting Ruolo, and adopting Seventh Circuit's analysis).

- Accordingly, ***the district court abused its discretion*** by refusing to award plaintiffs a recovery based on defendants' profits. Id. at 607 (emphasis added).

*International Star Class Yacht Racing Association v. Tommy Hilfiger U.S.A. Inc.*, 80 F.3d 749 (2nd Cir. 1996), *subsequent proceeding*, 146 F.3d 66 (2nd Cir. 2000) (an infringer cannot escape the statutory consequences of the Lanham Act, by engaging in "willful blindness" toward another's superior trademark rights).

*Louis Vuitton Malletier v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002) (citing cases) ("Willfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice. . . . [C]ontinued activity after receipt of [a] "cease and desist" letter was "more blameworthy").

Order Re: Plaintiff's Motion for Summary Adjudication of Damages (Mar. 7, 2003), *in* Rolex Watch U.S.A., Inc. v. Zeotec Diamonds, No. 2:02-cv-01089 (GAF) (VBKx) (C.D. Cal. Mar. 20, 2003) (Feess, J.) (holding that "Willfulness can be inferred from ongoing abuse after having been presented with a cease and desist demand.") (citing Louis Vuitton Malletier v. Veit, 211 F. Supp.2d 567, 583 (E.D. Pa. 2002)), Exh. 2.

*Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1344, 1348-49 (7th Cir. 1994).

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
<u>SOUTHERN DIVISION</u>**

<table>
<tr>
<td>

**J-RICH CLINIC, INC., d/b/a
REAL PURITY,**

*Plaintiff,*

v.

**COSMEDIC CONCEPTS, INC.,
d/b/a PHILOSOPHY,
BIOTECH, INC., and
PHILOSOPHY, INC.,**

*Defendants.*

</td>
<td>

C.A. No.  02-CV-74324-PJK

Hon. John Corbett O'Meara
United States District Judge

Hon. Paul J. Komives
United States Magistrate Judge

</td>
</tr>
<tr>
<td>

**J-RICH CLINIC, INC., d/b/a
REAL PURITY,**

*Plaintiff,*

v.

**QVC, INC.,** *et al.,*

*Defendants.*

</td>
<td>

C.A. No.  03-CV-71750-PJK

Hon. John Corbett O'Meara
United States District Judge

Hon. Paul J. Komives
United States Magistrate Judge

</td>
</tr>
</table>

**PLAINTIFF'S CROSS-MOTION FOR (1) PARTIAL SUMMARY JUDGMENT,
ON DAMAGES, UNDER 15 U.S.C. § 1117(a); (2) PARTIAL SUMMARY
JUDGMENT ON AN ACCOUNTING OF PROFITS; AND (3) APPOINTMENT
OF A SPECIAL MASTER UNDER FED. R. CIV. P. 53,  TO  DETERMINE
<u>THE *AMOUNT* OF DAMAGES AND PROFITS</u>**

Plaintiff respectfully moves for summary judgment, against each of the Named

Defendants, on two kinds of monetary claims – namely, (1) an accounting of the infringers'

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v.
Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

profits, and (2) Plaintiff's damages, see 15 U.S.C. § 1117(a) – within a specific, limited, period of time, in which both such awards are *mandatory*, and are not subject to dispute.

The time-frame in question, is as follows:

- For Defendant Philosophy, Inc., April 10, 2002, through April 30, 2003;

- For Defendant QVC, Inc., March 4, 2003, through April 30, 2003;

- For Defendant Target Stores, Inc., April 28, 2003, to the present (except any period of time in which Target can affirmatively establish that "real purity" face cleanser was completely purged from inventory);

- For Defendants Nordstrom, Inc., Sephora, and Drugstore.com, Inc., April 28, 2003, to the present (except any period of time in which said Defendants can affirmatively establish that "real purity" face cleanser was completely purged from inventory).

Plaintiff reserves the right to file another Motion for Summary Judgment, addressing the migration to "purity made simple" by each of the Defendants, and seeking mandatory remedies under Section 1117, against:

- Philosophy, Inc., as a matter of law, for the entire period from April, 2002, to the present (because the migration did not stop the infringement, and Philosophy cannot meet its evidentiary burden to prove that the remedial actions were fully effective to eliminate any *likelihood* of confusion);

- QVC, Inc., as a matter of law, for the entire time period from March 4, 2003, to the present (because the migration remedied nothing); and

- Against Defendants other than QVC, Inc., for the entire period of time in

-2-

question (without regard to inventory of "purity made simple" or "real purity,"

because the migration did not fix the pre-existing violation).

However, because the issues relating to the "purity made simple" migration are somewhat

different, and have not yet been addressed by this Court as a matter of law (in contrast, issues

pertaining to "real purity" *have* been conclusively resolved), the post-migration issues need

to be raised at another time.  The scope of this Motion is, therefore, specifically limited.

Concerning the *amount* of damages and profits to be awarded, Plaintiff respectfully

asks that the Court appoint a special master, as authorized by 15 U.S.C. § 1117(a), and FED.

R. CIV. P. 53.  This Motion does not propose a specific *amount* – but only points out that the

predicate for warding *some* damages and *some* profits has already been satisfied as a matter

of law.  The question, "how much?," can be addressed in the ordinary course by the Special

Master (or by this Court, if it elects to do so itself), at the appropriate time.

The point we make, here, is simply that – in the time-frame specifically addressed in

this Motion – the legal predicate for an award of damages and profits is already established

as a matter of law, and therefore, the only thing remaining to be determined (for this specific

time-frame) is the *amount* of damages and profits to be awarded.  Local Rule 7.1 has been

satisfied.  See Exh. 10.                          Respectfully submitted,


August 23, 2004                          __ /s/ Eric C. Grimm_____
                                         Eric C. Grimm (P58990)
                                         **CALLIGARO & MEYERING, P.C.**

                                         COUNSEL FOR PLAINTIFF
                                         J-RICH CLINIC, INC.,
                                         d/b/a REAL PURITY.

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v.*
*Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT, AND PLAINTIFF'S MOTION TO APPOINT A
SPECIAL MASTER UNDER FED. R. CIV. P. 53, TO
DETERMINE THE *AMOUNT* OF DAMAGES AND PROFITS**

Plaintiff respectfully moves for partial summary judgment, on (1) an award of the infringers'
profits, and (2) recovery of money damages, in the specified, and limited, time-period from (for
Philosophy) April 10, 2002, to April 30, 2003; (for QVC) March 4, 2003, to April 30, 2003; and (for
other Defendants) April 26, 2003, to the present. Plaintiff also respectfully prays for the Court to
streamline proceedings, by appointing a *special master* – as authorized in law – to determine the
*amount* of the profits and damages to be awarded.

## 1.   THE TRIGGER DATES.

In order to understand the precise – and limited – scope of this Motion, it is helpful to
elaborate upon the issues *not* presented in this Motion. First, any issues related to the Defendants'
migration to "purity made simple," see, e.g., Doc. Ent. 117, 126, 163, 173 (addressing these issues
in considerable detail – although the Court has yet to analyze them with the full attention they
deserve), are suitable for summary judgment resolution under FED. R. CIV. P. 56, id., but are outside
the scope of this Motion. Although we again urge the Court to address our prior Motion (Doc. Ent.
163 – which is still pending and has not been addressed), without further delay, we have voluntarily
(and without waiving any rights or conceding any issues), limited the scope of this Motion.

Second, this Motion does not seek summary judgment in relation to any monetary claims in
the period from March 21, 1996, to April 10, 2002. April 10, 2002, is the date that Charles
Chandler, representing J-Rich Clinic (SOF 67-69), concluded his fact investigation (SOF 69-70),
and – based on his thorough investigation of the facts – informed Philosophy, Inc., that J-Rich Clinic
had senior right to the REAL PURITY™ trademark (SOF 70-74), and instructed Philosophy to stop

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v.*
*Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

infringing it.  (SOF 69-74).  Attorney Chandler was always (and today remains) absolutely correct in his factual and legal assessment that Plaintiff enjoys superior trademark rights, and always has.  (SOF 71-72); <u>see also</u> Opinion & Order (June 30, 2004) (Doc. Ent. 179).  Plaintiff has **always** been entitled to prevail on the issue of priority.  <u>Id.</u>  It only took a little time for this to be recognized.

Subsequent to receiving Chuck Chandler's "C&D" letter, Philosophy's management, including its General Counsel, conducted no investigation whatsoever.  (SOF 75-87).  Instead – without any good-faith factual basis whatsoever to dispute Attorney Chandler's findings – Philosophy and its lawyers consciously and deliberately chose to keep on infringing.  <u>Id.</u>

The only minor remedial action they took, in that time-period, was to make some minor cosmetic changes to their packaging (at which time they could have easily changed marks), but the infringement of Plaintiff's mark continued – deliberately, willfully, and unabated.  (SOF 69-87).

By failing – completely and utterly – to conduct any factual investigation or legal research at all, Philosophy cannot even possibly have had any "good faith" basis for disregarding Attorney Chandler's correspondence (and subsequent follow-up correspondence by litigation counsel).  <u>Id.</u>

The significance of the date on the other end of the excluded range (3/21/1996), is this:  On March 21, 1996, in violation of Plaintiff J-Rich Clinic's exclusive trademark rights, Philosophy, Inc., of Phoenix, Arizona, commenced infringing the Plaintiff's trademark REAL PURITY™.[4]

For the other Defendants, such as QVC, the "trigger dates" correspond with the dates that

_____

[4]Moreover, Philosophy's President admits under oath that a prior mark – "purity" – was jettisoned, in 1996, precisely and solely due to trademark concerns.  (SOF 41-50).

Subsequently, in 1998, Philosophy, Inc., registered several Internet domain names – including < philosophy.com >, its "house mark" and < hopeinajar.com >, its second-biggest product.  At that time, domain names cost $70.00 annually, to register.  The domain name < realpurity.com > (Philosophy's biggest product was its face cleanser, "real purity"), was already taken by one of Plaintiff's authorized distributors.  It is fair to infer that Philosophy, Inc., attempted to register < realpurity.com > in 1998, and failed to do so, but intentionally chose to keep infringing Plaintiff's *common-law* trademark.

**PARTIAL RULE 56 MOTION**, *in J-Rich Clinic d/b/a REAL PURITY v. Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

Page 2 of  20

Plaintiff's counsel first sent each Defendant as separate "C&D letter" (3/4/2003, for QVC, <u>see</u> Exh. 3 (correspondence from Eric. C. Grimm, to Douglas Briggs, President, QVC, Inc. (Mar. 4, 2003))), or when Plaintiff first named each such Defendant as a party to an infringement lawsuit.

## 2.   <u>INFRINGEMENT IN THE 3/21/1996 - 4/10/2002 PERIOD.</u>

Trademark infringement is a *strict-liability* tort.  <u>See</u> <u>Taubman Co. v. Webfeats</u>, 319 F.3d 770, 775 (6th Cir. 2003) ("the proper inquiry is not one of intent . . . the offender's motives are largely irrelevant") (citing <u>Wynn Oil Co. v. Thomas</u>, 839 F.2d 1183, 1188 (6th Cir. 1988)). Moreover, "subject *only* to principles of equity," <u>Wynn Oil Co. v. American Way Serv. Corp.</u>, 943 F.2d 595, 606-07 (6th Cir. 1991) (emphasis added) (*quoting* <u>Roulo v. Russ Berrie & Co.</u>, 886 F.2d 931, 941 (7th Cir. 1989)), and without any mandatory pre-condition of proving any particular culpable mental state,[5] <u>id.</u>, monetary remedies can be awarded under 15 U.S.C. § 1117(a), whenever any violation of 15 U.S.C. § 1125(a) is established.  <u>Id.</u>

Here (as we elaborate upon, and fully demonstrate, *infra*), a violation of section 1125(a) is conclusively established as a matter of law, at all times from March 21, 1996 to the present.

Therefore, Philosophy ought to be liable for its own – and all the other infringers' – statutory violations, throughout the entire period of infringement.

Here's why:  It is undisputed (factually speaking, because Philosophy's President and General Counsel both concede under oath – <u>see</u> SOF 45-50) that Philosophy, Inc., failed to perform any *search* (generally called a "full search") to "clear" the mark REAL PURITY for conflicts with

---

[5]<u>See also</u> Danielle Conway-Jones, *Remedying Trademark Infringement: The Role of Bad Faith in Awarding an Accounting of Defendant's Profits*, 42 Santa Clara L. Rev. 863 (2002), Exh. 4 ("Congress did not intend bad faith to be a requirement for an award of the remedy of an accounting of profits in response to cases of trademark infringement.") (carefully analyzing decisions and legislative history).

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v.*
*Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

Page 3 of  20

prior *common-law* (i.e., "unregistered") trademarks, prior to the infringement.[6]  (SOF 33-66).

Although limited-scope searches were performed for Philosophy, in 1996, it is admitted by Philosophy's President and by its General Counsel, (SOF 45-54), that these searches primarily focused on state and federal *registration* records, omitting all or nearly all *common-law* marks.  Id.

Conducting such limited searches, *in lieu* of a "full search," has been recognized by courts to constitute sufficient, probative evidence to support a finding of "bad faith" based on a theory of "*willful blindness*."  E.g., International Star Class Yacht Racing Association v. Tommy Hilfiger U.S.A. Inc., 80 F.3d 749 (2nd Cir. 1996), *subsequent proceeding*, 146 F.3d 66 (2nd Cir. 2000).

Nevertheless, although the "willful blindness" of Philosophy creates a triable issue of fact, in the 1996-2002 time-frame (i.e., neither Philosophy nor J-Rich Clinic, d/b/a REAL PURITY gets summary judgment prior to 2002), it does not render the award of damages or profits *mandatory*. An award of profits and damages, for the entire time from March 21, 1996, to the present, is *permissible* (in fact, probably advisable),[7] but not strictly *mandatory*.

---

[6]This is hardly the only circumstantial evidence of a deliberate intent to infringe, by Philosophy, dating back to 1996. See Doc. Ent. 5, 16-27, 30, 216-18, 222 (detailing other evidence).  However, this evidence alone (see SOF 1-66, 88-94), standing all by itself, is sufficient to raise a "genuine issue of material fact."  The genuine fact issue presented in this case – in the time-period from 1996 to 2002 – is reinforced by additional circumstantial evidence of intent, that Plaintiff has detailed elsewhere, and that need not be repeated here.

[7]In this case, the time-period of infringement by one or more Defendants, commenced on March 21, 1996, and the infringement continues to the present.  A remedy under Section 1117 is appropriate – throughout the entire time period – on account of the "willful blindness" of Philosophy, Inc., starting in 1996.  See Hilfiger, 80 F.3d at 754, *subsequent proceeding*, 146 F.3d at 71-73; see also Hermes Int'l v. Lederer De Paris Fifth Ave., 219 F.3d 104, 107 (2nd Cir. 2000) (high degree of culpability by Philosophy, on and after March 21, 1996, means that damages and profits *can* potentially be awarded, and therefore claims pre-dating April 10, 2002, cannot be adjudicated by way of summary judgment).  Under the Hilfiger, and Hermes Int'l, decisions, Philosophy cannot employ "*laches*" to cut off damages in the pre-2002 time period, if the infringement has always been intentional (the fact issue of intent, in the pre-2002 time-period is disputed).  Thus, as a matter of law, Philosophy ***cannot*** secure summary judgment in the pre-2002 time period because – under Wynn Oil Co., 943 F.2d at 603, and Champions Golf Club,

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v.*
*Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

Page 4 of  20

### 3.   <u>MANDATORY AWARD OF PROFITS ON AND AFTER 4/10/2002.</u>

The period in which damages and profits become *mandatory* is on and after the point in time at which each infringer was placed on actual notice (in the form of a cease & desist letter, or the filing of suit) of Plaintiff's trademark rights. <u>Wynn Oil Co. v. American Way Serv. Corp.</u>, 943 F.2d 595, 606-07 (6th Cir. 1991); <u>see also</u>, <u>e.g.</u>, <u>Louis Vuitton Malletier v. Veit</u>, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002) (citing cases) ("Willfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice. . . . [C]ontinued activity after receipt of [a] 'cease and desist' letter was 'more blameworthy.'"); Order Re: Plaintiff's Motion for Summary Adjudication of Damages (Mar. 7, 2003), *in* <u>Rolex Watch U.S.A., Inc. v. Zeotec Diamonds</u>, No. CV 02-01089 (GAF) (VBKx) (C.D.Cal. 2003), Exh. 2 (holding that "Willfulness can be inferred from ongoing abuse after having been presented with a cease and desist demand.") (*citing* <u>Louis Vuitton Malletier v. Veit</u>, 211 F. Supp.2d 567, 583 (E.D. Pa. 2002)).

In <u>Wynn</u>, the Sixth Circuit held that intentional, deliberate infringement, and an intent to deceive the public will be *presumed*, <u>Wynn</u>, at 603, if the infringer continues its misconduct on and after the date of actual notice of the senior mark-owner's rights.  Had Philosophy conducted a reasonable fact investigation, after April 10, 2002, it might hypothetically be able to rely on the thoroughness of its investigation to overcome the presumption of willfulness.  But such a scenario is purely hypothetical.  Here, it is undisputed as a factual matter, that absolutely no investigation (thorough or otherwise) was conducted.  (SOF 75-87).  Therefore, summary judgment is required because the material facts are not in dispute and the mandatory presumption of willfulness is controlling.  A finding of intentional and deliberate infringement is required after April 10, 2002.

---

<u>Inc. v. Champions Golf,</u> 78 F.3d 1111, 1121 (6th Cir. 1996) – Philosophy's improper intent can be inferred, in this case, from the abundant circumstantial evidence that Philosophy always intended to pirate Plaintiff's trademark.

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v.
Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

Page 5 of  20

The Sixth Circuit also recognized that, while "willfulness" is not a mandatory pre-requisite for an award of profits (such an award *can* be awarded, in some cases, even when intent is not necessarily proven), id., at 606-07 (quoting Roulo, 886 F.2d at 941); see also note 5, *supra*, an award of profits and damages becomes **mandatory** (i.e., the district court abuses its discretion by failing to grant a monetary award) on and after the time that the presumption of willfulness kicks-in, as a result of continued infringement following the mark-owner's actual notice to the infringer.[8] Id. at 607 ("Accordingly, the district court *abused its discretion* by refusing to award plaintiffs a recovery based on defendants' profits.") (emphasis added).

In other words, once the infringer has the mark-owner's "C&D" letter in hand (or has been sued), then the infringer has to make a conscious choice – either stop infringing immediately, or knowingly risk monetary and other consequences. Each of the infringers in this case were placed on actual notice, and then made a conscious and deliberate choice to continue their infringement.

---

[8]Unlike the false advertising case (as opposed to an infringement case, such as the present case), of Balance Dynamics v. Schmitt Industries, Inc., 204 F.3d 683, 695 n.6 (6th Cir. 2000), in this case, the "deterrence theory" of disgorgement is plainly applicable, because measurable harm to the Plaintiff, and extraordinary, unjustifiable, financial benefit to the infringer, are both present: (1) Philosophy has clearly benefitted, financially, by using a mark identical to Plaintiff's mark **without** (to date) **paying even the reasonable royalty that would have been required, had the mark properly been licensed in 1996**; see note 9, *infra* (citing cases); (2) by building its business, from 1996 to the present, on the back of Plaintiff's well-deserved reputation for "natural" products, Philosophy has been able to appeal to a *much*-broader segment of the market, than if it had merely built a narrow, "cosmeceutial" brand-image (SOF 10-12, 17-37); (3) if the use of "REAL PURITY" contributed nothing to Philosophy's sales, then Philosophy would hardly have been so eager to "migrate" to a mark that preserved so many common elements with the Infringing Mark, e.g., Kimberly Knitwear, Inc. v. Kimberley Stores, Inc., 331 F. Supp. 1339, 1340-42 (W. D. Mi. 1971) (fact scenario, involving virtually identical 'baby step' migration "to preserve the image of what [the infringer] had been able to accomplish"); and (4) Philosophy has generated vast amounts of revenue from the face cleanser – while at the same time saturating the market with a non-natural product, that makes it dramatically more difficult for customers to appreciate Plaintiff's unique brand message. E.g., Declaration of Allison Lapa (SOF, Exh. I); Declaration of Dr. Richard Easterling (Dec. 26, 2004) (Doc. Ent. 5). In short – especially in light of Philosophy's complete and utter refusal to discontinue the infringement, after it was "caught" infringing – the "deterrence theory" is squarely on all-fours with this lawsuit.

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v.*
*Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

They knew precisely what risks they were taking (they all gambled, based on the cynical calculation that the Plaintiff – like Hope Aesthetics Cosmeceutical, in a prior lawsuit[9] – would run out of money, and could not afford to vindicate its rights).   And they have lost that gamble. (Plaintiff has prevailed on the merits, on summary judgment).   Defendants have no basis, now, to complain about the known and expected consequences of the deliberate choices they made.

## 4.   THE *WYNN* RULE PROMOTES PUBLIC POLICY AND JUDICIAL ECONOMY.

Monetary awards based on infringement that occurs on and after the date the infringer received a "C&D" letter, make perfect sense because such awards advance important public policies:

(1)      the long-recognized policy of deterring infringement in the first place (and promoting its prompt cessation), by rendering infringement unprofitable to the infringers, and

(2)      the promotion of judicial economy, through early, out-of-court settlement of trademark disputes, by taking away any motivation to attempt to profit by litigating for the purpose of prolonging the duration of infringement.

Wynn Oil Co., at 606-07; see also note 8, *supra*, notes 11, 15-16, *infra* (explaining why the "deterrence" rationale is particularly applicable to this case).   Of course, our argument is not limited strictly to these two common-sense policies, but these are among the most prominent.

Ultimately, "[t]he purpose of section 1117 is to take all the economic incentive out of trademark infringement."   Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 621 (9th Cir. 1993).   Unless Philosophy and the other Defendants are required to pay over all, or a significant portion, of the profits they generated from the infringement (including their willful continuation of the infringement on and after April 10, 2002, and even after Feb. 4, 2003), the purpose of the statute will not be

---

[9]Hope Aesthetics Cosmeceutical, Inc. v. Philosophy, Inc., No. 2:00-cv-73581-GEW (E.D. Mi. *filed* Aug. 9, 2000) (trademark lawsuit involving infringement of the *common-law* trademark rights of another natural-products company, by Philosophy's second-biggest "anchor product").

fulfilled.  Thus, for the sound and persuasive reasons reflected in the <u>Wynn</u> decision (consistent with the views of other Circuits), it would constitute legal error for this Court to *fail* to award (1) damages, and (2) disgorgement of the infringers' profits, during the period from April 10, 2002, to April 30, 2003.[10]  <u>Wynn Oil Co. v. American Way Serv. Corp.</u>, 943 F.2d 595, 606-07 (6th Cir. 1991).

The Sixth Circuit, in <u>Wynn Oil Co.</u>, specifically followed the sound reasoning of the Seventh Circuit.  According to the <u>Wynn</u> court (emphasis added): "As explained by the Seventh Circuit:

> The Lanham Act specifically provides for the awarding of profits in the discretion of the judge subject ***only*** to principles of equity. . . . "***The trial court's primary function is to make violations of the Lanham Act unprofitable to the infringing party***."  Other than general equitable considerations, ***there is no express requirement that the parties be in direct competition or that the infringer willfully infringe the trade dress to justify an award of profits***.  Profits are awarded under different rationales including unjust enrichment, deterrence, and compensation."

<u>Wynn</u>, at 606-07 (quoting <u>Roulo v. Russ Berrie & Co.</u>, 886 F.2d 931, 941 (7th Cir. 1989)).

This deterrence rationale of rendering the infringement unprofitable, is especially persuasive in this instance, when the infringing party has received notice ***in writing*** of the senior mark-owner's rights, and has been specifically instructed to "cease & desist" immediately.  <u>Id.</u>; note 8, *supra*, notes 11, 15-16, *infra*; <u>see also</u> <u>Quick Technologies, Inc. v. Sage Group, PLC</u>, 313 F.3d 338 347-49 (5th Cir. 2002) (analyzing significance of recent, 1999, amendments to Section 1117 of the Lanham Trademark Act) ("Because the jury was instructed that an award of profits was contingent on a finding of willful infringement, *and because the jury was not allowed to consider the public interest in making the misconduct **unprofitable*** in its damages determination, we conclude that the jury

---

[10]Although Plaintiff does not waive any rights whatsoever (aside from any claims based on the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c)), nevertheless – in order to streamline and expedite the resolution of the entire case – Plaintiff reserves the right (at some future time, and after evaluating the resolution of the instant Motion), to elect whether or not to forego monetary claims in the period from March 21, 1996, to April 10, 2002.

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v.*
*Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

instruction constitutes error.") (emphasis added); <u>Hilfiger</u>, 146 F.3d at 69, 71-73 ("We have held that an accounting for profits is available, even if a plaintiff cannot show actual injury or consumer confusion, if the accounting is necessary to deter a willful infringer from doing so again.").

Trademark infringement can be (and often is) quite profitable for the infringer.[11]  And it is not uncommon for the infringer (as all the Defendants have done in this case) to make the deliberate choice to finance protracted litigation, by continuing to profit from infringement.

Strategies such as this – namely, to leverage the proceeds of misconduct, thereby enabling further misconduct to occur –  tend to exaggerate some of the unfortunate imbalances already built-in to the American justice system.  <u>E.g.</u>, Carlye Adler, *Can you spot the knockoff?*, Fortune Small Business (Exh. 5).  Therefore, the public interest in maintaining a reasonably-level playing field, in the civil courts of justice – and ensuring that "justice" does not become little more than a strict function of one's means to pay for it – makes it especially imperative, in this case, to ensure that the "deterrence theory" of trademark remedies is fully implemented.  Accordingly, the function of 15 U.S.C. § 1117(a), is *precisely* to deprive the infringer of the very same incentives listed above – and to render the infringement unprofitable.  <u>Wynn</u>, at 606-07 (*quoting* <u>Roulo</u>, at 941).

### 5.    <u>TRADEMARK INFRINGEMENT IS ESTABLISHED AS A MATTER OF LAW.</u>

Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) is remedial in nature, and should be interpreted and applied broadly so as to effectuate its remedial purpose.  <u>Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.</u>, 670 F.2d 642, 651 (6th Cir. 1982) (quoting <u>Warner Bros.,</u>

---

[11]<u>Sands, Taylor & Wood v. Quaker Oats Co.</u>, 34 F.3d 1340, 1344, 1348-49 (7th Cir. 1994) (discussing this problem of incentives and deterrence, in more detail) (citing <u>Panduit Corp. v. Stahlin Bros. Fibre Works</u>, 575 F.2d 1152, 1158 (6th Cir. 1978) ("[T]he infringer would have nothing to lose, and everything to gain if he could count on paying only the normal, routine royalty non-infringers might have paid. . . . [T]he infringer would be in a 'heads-I-win, tails-you-lose' position."); <u>see also</u> Carlye Adler, *Can you spot the knockoff?*, Fortune Small Business (Exh. 5) (specifically listing Defendants Target and QVC, as problem retailers).

Inc. v. Gay Toys, Inc., 658 F.2d 76, 79 (2nd Cir. 1981)); *accord* Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001).  "To prevail under this section, a claimant must show: (1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two."[12]  Planetary Motion, at 1193.  In this case, Plaintiff already has established *both* elements of infringement – (1) priority, and (2) likelihood of confusion – as a matter of law.

The first element – Plaintiff's ownership of the REAL PURITY™ trademark, through prior use in commerce – is established, as a matter of law, on a nationwide basis.  See (Doc. Ent. 179) (Court's summary judgment Order, on the issue of priority).  Indeed, Defendants and their counsel were unable even to submit a Rule 56(f) affidavit – meaning they could not even justify additional discovery on this point.  Nor did Defendants submit any evidence at all to controvert Plaintiff's proof of prior use.  Id. at 12-16.  In short, this Court's early affirmative finding, on Feb. 10, 2002, that "Plaintiff most likely will prevail . . . on the issue of prior use," (RE 30, Opinion and Order, at 14), merely stated an inevitable conclusion that Philosophy always knew was eventually coming – sooner or later – ever since it started infringing in 1996.

The second factor of trademark infringement, a *likelihood* of confusion, is also conceded by Philosophy and the other Defendants.  It is conceded in Philosophy's Answer and Counterclaims – where Philosophy affirmatively alleges a likelihood of confusion between the two marks.  Philosophy is not at liberty – at this late juncture – to withdraw such a significant judicial admission, now that it has lost on the issue of priority.  Moreover, Defendants' counsel made the same judicial admissions before the Sixth Circuit in a number of filings, and in open court, on June 11, 2003.

---

[12]The hallmark of trademark infringement is a likelihood of confusion.  PACCAR, Inc. v. Telescan Techs., 319 F.3d 243, 249 (6th Cir. 2003) ("The touchstone of [trademark] liability . . . is whether the defendant's [actions are] likely to cause confusion . . .").

Thus, "a *likelihood* of confusion" – caused by the infringing "real purity" face cleanser, has already been conceded by Defendants on the record.  See Answer and Counterclaim (affirmatively alleging a *likelihood* of confusion); Transcript of Proceedings, at 6-7, 11, 20 (June 11, 2004) (Doc. Ent. 81) (binding judicial admissions by Defendants' counsel):

- "The issue of likelihood of confusion is stipulated to." (Page 20);

- "Likelihood of confusion, significantly, is not an issue here." (Page 6)

- "We would be willing to stipulate . . . [to] a preliminary injunction and simply agree that we're not going to use the mark Real Purity . . . ." (Page 7);

- "[L]ikelihood of confusion . . . it's been stipulated to." (Page 11).

(Doc. Ent. 81).  In short, the following four premises are true:

(1)    Plaintiff ***always*** has had "prior use" of the REAL PURITY™ mark, and senior right to it (see Doc. Ent. 179),[13] and was speaking the truth on April 10, 2002, when Attorney Chandler, based on his fact investigation, informed Philosophy that Plaintiff owned REAL PURITY, and instructed them to stop infringing (SOF 67-87);

(2)    Defendants could not even offer any evidence to try to raise a factual dispute about Plaintiff's priority (Doc. Ent. 179, at 12-16);

(3)    The other element of trademark infringement – a *likelihood* of confusion – is ***stipulated to*** by Defendants (Doc. Ent. 81), and

---

[13]Moreover, to reinforce this point, on August 14, 2004, the U.S. Patent & Trademark Office issued an Order ***canceling*** Philosophy's prior (improperly-issued) registration No. 2,112,922.  On August, 16, this Court entered an Order directing that its June 30 cancellation command *also* be certified to the Director, U.S.P.T.O.  And another two days after that, the Trademark Trial and Appeal Board, on August 18, 2004, issued a 20-day "show cause" Order, directing Philosophy to appear and "show cause" why a cancellation directive should not be issued from yet a third direction.  In short, the "registration" erroneously relied-upon early in this case by the Defendants, is dead, dead, dead, and has no hope of revival for any purpose.

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v.*
*Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

Page 11 of  20

(4)     ***Prior*** to the change from "real purity" to "purity made simple," Defendants were told by Judge O'Meara in writing that Plaintiff was highly to prevail. (*See* Doc. Ent. 30).

The significance of Philosophy's stipulation of June 11, 2003 (Doc. Ent. 81), cannot be overstated. Indeed, Philosophy's own counsel argue, "[t]he significance of that [stipulation] cannot be overstated." (Id. at 7). Thus, no dispute now remains that Philosophy's use of the "real purity" mark, without Plaintiff's authorization, created a ***likelihood*** of confusion. Both elements of trademark infringement are established, as a matter of law, and therefore a remedy is required.

Since a violation of 15 U.S.C. § 1125(a), is unmistakably established on the record, the remedies for infringement are set forth in the unambiguous statutory language of 15 U.S.C. §§ 1116, 1117, 1118, and 1119. The remedy under Section 1119, has already been awarded as a matter of law. A separate Motion, seeking a remedy under Section 1116 has already been filed.

This Motion concerns the statutory remedy under Section 1117 of the Lanham Act.

And, as already explained, a monetary remedy under Section 1117, makes perfect sense, from the standpoint of three specific, long-recognized public and equitable policies:

(1)     unjust enrichment to the Defendants (i.e., they should not be permitted to profit by using Plaintiff's trademark, without paying any reasonable royalties at all – because that would make infringement more financially attractive than compliance with law);

(2)     deterrence (instead of financial incentives to engage in protracted litigation, it is important to create proper incentives, both for these particular defendants – i.e., "specific deterrence" – and also future trademark infringers, by making an example – i.e., "general deterrence," to conform their conduct ***promptly*** with law); and

(3)     compensation.

Accordingly, since it would be an abuse of discretion, under <u>Wynn</u>, for the Court to fail to award

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v.*
*Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

*some* monetary relief, we respectfully submit that the instant motion should be GRANTED.

Without ever obtaining a proper trademark license from the Plaintiff, or Plaintiff's permission to call its face cleanser "real purity," Philosophy, Inc., of Phoenix, Arizona, has unlawfully sold in excess of $27,000,000.00 worth of infringing face cleanser.[14] See (SOF 95) (table summarizing Philosophy's admitted gross revenue). A surprisingly large proportion of those infringing sales occurred on and after April 10, 2002 – see id., – when Philosophy was told, in writing, to cease & desist infringing Plaintiff's trademark. (SOF 67-87, 95).

Moreover, the gross revenue of Philosophy does not fully capture the gross revenue of the other Defendants in this lawsuit, because the other Defendants mark up the Infringing Product, before offering it to customers. They, too, are required to pay: (1) their profits, (2) Plaintiff's damages, and (3) the costs of the action. 15 U.S.C. § 1117(a). If the product had been properly licensed, from 1996 to the present, then Philosophy itself (other infringers, aside) would have been required to pay 6 to 9 percent of gross revenue (thus, not less than $1,620,000.00) in royalties, for the use of Plaintiff's REAL PURITY™ mark on Philosophy's cleanser.

Such an award is necessary – because the alternative would be to make infringement more attractive, financially, than normal licensing procedures, for would-be infringers.[15]

---

[14]We respectfully note the statutory allocation of the burden of proof: "In assessing profits the ***plaintiff shall be required to prove defendant's sales only***; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).

Plaintiff does not in any way concede that the numbers *admitted* by Philosophy are in any way accurate or complete. But they are a start. Under 15 U.S.C. § 1117(a), the Court has power to have a special master audit the Defendants' records, to assist the Court in assessing damages: "The court ***shall*** assess such profits and damages ***or cause the same to be assessed under its direction***." Id. Because of difficulties associated with discovery in this case, and in the interest of judicial economy ("elements of cost and deduction" will be document-intensive), Plaintiff respectfully prays for an auditor, to help assess damages and the infringers' profits.

[15]Sands, Taylor & Wood v. Quaker Oats Co., 34 F.3d 1340, 1344, 1348-49 (7th Cir. 1994) (discussing this problem of incentives and deterrence, in more detail) (citing Panduit Corp. v.

In addition to the damages, Philosophy's profits, in an amount up to three times the reasonable royalty damages, see U.S. Structures v. J.P. Structures, 130 F.3d 1185, 1191-92 (6th Cir. 1997) (quadruple damages), under 15 U.S.C. § 1117(a), can be awarded (i.e., $4,860,000.00 – which would still leave Defendant Philosophy with a huge windfall from its infringement).

### 6.   DAMAGES IN TRADEMARK CASES

The bedrock principle, for evaluating damages in trademark cases, is the public interest in general and specific deterrence.[16]   The Court must take firm action to deter trademark infringement (both by these infringers, and by future trademark infringers in other cases) by rendering the infringement **unprofitable** to these infringers (here, Philosophy and the other Defendants).  Sands, Maier Brewing, Johnson, supra note 16 ("the trial court's primary function should center on making any violations of the Lanham Act unprofitable") (emphasis added); see also Quick Technologies, Inc. v. Sage Group, PLC, 313 F.3d 338 347-49 (5th Cir. 2002) ("[B]ecause the jury was not allowed to consider the public interest in making the misconduct **unprofitable** in its damages determination, we conclude that the jury instruction constitutes error.") (emphasis added).

In this case, the Defendants have generated enormous profits – millions of dollars alone,

---

Stahlin Bros. Fibre Works, 575 F.2d 1152, 1158 (6th Cir. 1978) ("[T]he infringer would have nothing to lose, and everything to gain if he could count on paying only the normal, routine royalty non-infringers might have paid. . . . [T]he infringer would be in a 'heads-I-win, tails-you-lose' position."); see also Carlye Adler, Can you spot the knockoff?, Fortune Small Business (Exh. 5) (specifically listing Defendants Target and QVC, as problem retailers).

   [16]Sands, Taylor & Wood v. Quaker Oats Co., 34 F.3d 1340, 1348-49 (7th Cir. 1994) ("[T]he need for deterrence is an important dimension of [15 U.S.C.] section [1117](a). . . . [and] many of the remedies available under the Lanham Act 'flow . . . from the plaintiff's proof . . . of the defendant's unjust enrichment or the need for deterrence.'") (citations omitted); Maier Brewing Co. v. Fleischmann Distilling Corp., 390 F.2d 117,  (9th Cir. 1968) ("[T]he trial court's **primary** function should center on making any violations of the Lanham Act **unprofitable** to the infringing party.") (emphasis added) (quoted in Sands); accord Johnson v. Jones, 921 F. Supp. 1573, 1587 (E.D. Mi. 1996), rev'd in part on other grounds, 149 F.3d 494 (6th Cir. 1998).

**PARTIAL RULE 56 MOTION**,
in J-Rich Clinic d/b/a REAL PURITY v.
Philosophy, Inc., C.A. No. 02-CV-74324DT.

from Philosophy's March 8, 2003, and April 24, 2003 appearances on QVC, which two appearances took place without Plaintiff's permission and over Plaintiff's vigorous objection – both appearances subsequent to a judicial finding that (1) a *likelihood* of confusion was present, and (2) Plaintiff was likely to prevail (as Plaintiff eventually did) on the issue of priority.  (Doc. Ent. 30), Exh. 6.

By electing to sell "real purity" Infringing Product on March 8 and April 24, QVC and Philosophy both took a known and calculated risk that they would be required, at trial on the merits, to disgorge *all* the profits generated on those days (essentially, they gambled that, like other merchants offering natural products, the Plaintiff would be financially unable to enforce its rights in court).  They lost that gamble – because a *likelihood* of confusion is now conceded as a matter of law, and Plaintiff has always (ever since 1996, and certainly, since April 10, 2002) been entitled to prevail on the issue of priority.  (Doc. Ent. 179).

Indeed, on and after April 10, 2002, all of the infringement must be presumed willful and intentional,[17] because Plaintiff – on the basis of a thorough fact investigation, and legal research, sent *written* notice to Philosophy of Plaintiff's prior trademark rights, and demand that the infringement cease.  (SOF 67-87).  Further, Philosophy's President and General Counsel *admit* that they did not even investigate the facts – despite being placed on written notice of their exposure, if found infringing. (SOF 70-86).  Without question, Defendants have profited handsomely from *consciously choosing to continue* to use and profit from Plaintiff's trademark – without authorization – even after repeated written warnings.  (SOF 67-87, 95).   It would, therefore, be contrary to every

---

[17]Wynn Oil Co v. American Way Serv. Co., 943 F.2d 545, 603, 607 (6th Cir. 2001) (holding that "[T]he district court abused its discretion by refusing to award plaintiffs a recovery based on defendants' profits," in large measure because "intent to deceive [the] public *will be presumed* from continued use [of defendants' mark] after attaining knowledge of another's [plaintiff's] legal mark") (emphasis added) (quoting Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 119 F.2d 316, 324 (6th Cir. 1941)).

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v.
Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

Page 15 of  20

principle of law and common sense (and would incentivize more egregious misconduct in the future, *see* notes 11, 15-16, *supra*) for the Defendants to retain all the ill-gotten profits they generated, knowingly, without authorization to use Plaintiff's REAL PURITY™ trademark.

## 7.  THE CORE DISPUTE IN THIS CASE.

While some facts in this case are disputed,[18] the Court may be surprised to learn that the parties agree about something.  What we agree about is this: The core dispute in this case is not really about facts.  It is about the law.  Fortunately for all of us, the long-established and controlling law makes it clear – beyond peradventure – who is right and who is wrong on this subject.

The legal dispute in this case is over the long-recognized method of obtaining ownership of a trademark.  Contrary to over a century of settled law (in the Supreme Court, in the Sixth Circuit, in every other Circuit, and in the highest court of every state to address the issue), Philosophy self-servingly contends that *registration* with the U.S. Patent & Trademark Office, is what makes one the "owner" of a mark, and that late-filed registration trumps the rights of a prior user.  Philosophy's legal argument is not only wrong, see Opinion and Order (Doc. Ent. 179), but the controlling rule is so firmly established that Philosophy's argument cannot even be considered a "good faith argument for the extension, modification, or reversal of existing law."  FED. R. CIV. P. 11.  No Circuit (certainly, not the Sixth) would reverse dozens of precedents, and put itself at odds with the Supreme Court and every other Circuit – just to change the rules to suit Philosophy's preferences.

---

[18]I.e., In the time-frame from 1996 to April 10, 2002, Philosophy's President offers self-serving testimony that the infringement happened by accident and that the SNELL & WILMER law firm is to blame for failing to search for pre-existing common-law "REAL PURITY" marks. (SOF 41-66).  Nevertheless, intent *can* be inferred from circumstances. Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1121 (6th Cir. 1996) ("An 'intent to infringe can be shown by circumstantial evidence.'")  (quoting Wynn Oil Co. v. American Way Serv. Corp., 943 F.2d 595, 603 (6th Cir. 1991)).  Here, the circumstances are clearly sufficient for the issue to go to the jury.  See note 6, *supra*.  Therefore, summary judgment is improper on *mens rea* on the pre-2002 time period.

Quite the contrary, Plaintiff always has argued, and the Courts always have stated, prior common-law use trumps a subsequent federal registration. That's the whole case in a nutshell.

This is why the Court, on June 30, 2004, see (Doc. Ent. 179), applied the "bedrock principle" of trademark law, id., and held that Plaintiff has established nationwide ownership of the REAL PURITY™ mark,[19] through prior, widespread use of it in commerce. Id.

"Ignorance of the law is," of course, "no excuse." Baze v. Parker, 371 F.3d 311, 328 (6th Cir. 2004); United States v. Carmichael, 232 F.3d 510, 522 (6th Cir. 2002). If Philosophy's President and General Counsel failed to understand (and still refuse to accept) that – *as a matter of law* – any "registration" they obtained has always been subordinate to the prior common-law use of REAL PURITY™ by the Plaintiff, and Plaintiff's common-law use always has made Plaintiff the exclusive owner of the REAL PURITY™ mark – then *they only have themselves to blame*. (SOF 41-66). This long-established rule has never been any secret, and can easily be gleaned from numerous published decisions by both the Sixth Circuit and the Ninth Circuit. Id. Philosophy had many lawyers, in 1996, who *did* know this basic principle (see Michael K. Kelly, *How Does a Business Trademark Their Name*?, THE PHOENIX BUS. J. (Jan. 20, 2000) (SOF 6-7)).

Philosophy (as the junior, infringing, adopter of the "real purity" mark), unquestionably had the last clear chance to avoid a collision between the two companies' marks. By failing to conduct the necessary legal research, or even to search for pre-existing common-law marks, Philosophy is at fault for the later (entirely avoidable, in the exercise of reasonable diligence) collision. Id.

Instead of obeying the long-settled law, however, Philosophy's President has elected to decorate her product with a protest about how much she wants to legislate her own, personal rules:

---

[19]The Court also ordered Philosophy's registration canceled. Id. Because the registration is now canceled, Philosophy cannot rely upon it, in any event, and should not even mention it at trial. A motion *in limine* will, in due time, be filed, addressing this point.

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v.*
*Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

> [W]e come into this world with all the right instincts.[20] [W]e are innocent,
> and therefore *perceive things how they should be*, *rather than how they are*.

Excerpt from text appearing on every bottle of Philosophy's face cleanser (1996-present).

With all respect to Ms. Carlino's (the author's) self-interested views on "how things should be" – in fact, the settled "bedrock principle" of trademark law – namely, that J-Rich Clinic wins because it used the mark first – *is* "how things should be," in addition to "how things are."

## 8. INFRINGEMENT ON AND AFTER FEB. 4, 2003, IS PARTICULARLY EGREGIOUS AND INEXCUSABLE.

Philosophy and its co-Defendants have never had any good-faith basis for their voluntary choice to continue infringing. It is undisputed that Philosophy changed its product packaging in the summer of 2002. It could have re-branded at that time, without any logistical (as opposed to branding) difficulty. Cristina Carlino attempts to justify her decision by referring to a "poem" and her own personal opinion that she has "a right" to put it on her bottles.

If she wants her poem, all she has to do is rename her face cleanser "BEAUTY" or "INSPIRATION," (or another word) both of which work perfectly well, as part of her "poem:"

> **philosophy®:** beauty is natural. We come into this world
> with all the right instincts . . . .

> or

> **philosophy®:** inspiration is natural. We come into this world
> with all the right instincts . . . .

Perhaps all the more apropos, in this instance, would be to call the face cleanser "ARROGANCE," which also works quite well with Ms. Carlino's poem, and also captures the essence of her brand:

---

[20]It is perhaps naive, at best, to suggest that "we come into this world" devoid of the instincts to behave selfishly, with greed, or in violation of known rules. Or, perhaps, Ms. Carlino suggests that her own selfish, greedy, and ulawful behavior is – in fact – motivated by what she considers to be "all the right instincts." Of course, the law promotes somewhat more civilized norms of behavior – whatever the instincts of Philosophy and its President may be.

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v.*
*Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

Page 18 of 20

> **philosophy®:** arrogance is natural. we come into this world with all the right instincts. we are innocent, and therefore perceive things as they should be, rather than how they are. our conscience is clear, our hands are clean, and the world at large is truly beautiful . . . .

However, building its fake-"natural" brand-image on the back of the Plaintiff's highly-regarded brand of genuine, natural, products, has been enormously profitable for Ms. Carlino and her company. See SOF. So it is hardly surprising that she does not want her product to stand or fall on its own merits. As a result, on Feb. 4, 2003, Philosophy and its counsel actively sought to deceive Judge O'Meara. See Doc. Ent. 49. In particular, attorney Michael Kelly was deliberately deceptive:

- Mr. Kelly completely failed to inform Judge O'Meara that Philosophy had just appeared on QVC, in mid-January, 2003 (we'll submit the videotape, on request, from January, 2003);

- Mr. Kelly deliberately attempted to alarm Judge O'Meara, on Feb. 4, 2003, with the surprise announcement of a "$3 million" appearance on QVC (on March 7, 2003 – a month into the future), but on reflection, that was easily enough time to re-brand before the TV slot;

- In Mr. Kelly's "proposal" for injunctive relief, Kelly and his client completely failed to inform the Court that the "proposal" was deliberately calculated to enable QVC and Philosophy deliberately to profit from additional televised infringement on April 26, 2003;

- Mr. Kelly falsely informed Judge O'Meara that almost all QVC purchasers are "repeat customers" (which, of course, still ignores how many "repeat customers" became "repeat customers" precisely *because* of infringement of Plaintiff's mark) – when the actual statistics (which we'll provide, at the Court's request) tell a demonstrably different story;

- Mr. Kelly, in his pre-hearing Briefs (Exh. 7), falsely sought to mislead Judge O'Meara, by purporting to rely on a "statute of limitations," when there is no such thing, ever, in Lanham Act cases (see Exh. 8, 9, refuting many such falsehoods);

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v.
Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

- Philosophy's pre-hearing briefs falsely accused Plaintiff of "fabricating evidence" – with no factual basis at all for such an inflammatory charge (Exh. 7) (see also Exh. 8);

- Philosophy's briefing failed to inform Judge O'Meara of controlling Sixth Circuit case-law (Kellogg v. Exxon), when they had a duty of candor to the Court (see Exh. 8);

- Philosophy's "proposal" for injunctive relief attempted to pretend that Plaintiff's customers **all** have Rich Easterling's same shopping habits, when we *know* (see Doc. Ent. 118), that this is absolutely untrue (thus, Judge O'Meara was misled by this and other deceptions);[21]

- Philosophy asked Judge O'Meara to believe that Mark Carlino is a "basketball coach" and not General Counsel (Exh. 7), but Carlino's recent deposition testimony was quite different.

Ultimately, Defendants' strategy (and, in a sense, it worked) was to throw enough smoke in the air, that Judge O'Meara would have difficulty sorting through it all, and would become hesitant about ordering the infringement to cease immediately.  But Defendants never had any basis for continuing to infringe at that time (or any other) and should not be rewarded for their deliberately deceptive and uncivil tactics in 2003.

August 23, 2004

Respectfully submitted,

    /s/ Eric C. Grimm
Eric C. Grimm
**CALLIGARO & MEYERING, P.C.**
20600 Eureka Road, Suite 900
Taylor, Michigan  48180
734.283.2727
Fax: 734.246.8635.

---

[21]Plaintiff's Objections were filed early – at approximately 2:30 in the afternoon, in Feb. 28, 2003.  However, Judge O'Meara issued his decision by facsimile at approximately 11:30 A.M., on Feb. 28, 2003, or two or more hours **before** the Objections (Doc. Ent. 35, Exh. 9), were filed.   As a result, he was fooled by Philosophy into believing (1) that no "actual confusion" evidence was in the record (more than enough was in the record), (2) that this "actual confusion" point mattered (Sixth Circuit law says it does not); (3) that there was "no evidence" of foreign sales (the record **did** contain evidence of foreign sales); and (4) that QVC sales somehow were different than other sales, and less likely to cause confusion (which is patently absurd – as anyone would know by looking at the videotapes of Philosophy's QVC appearances).

**PARTIAL RULE 56 MOTION**,
*in J-Rich Clinic d/b/a REAL PURITY v.*
*Philosophy, Inc.*, C.A. No. 02-CV-74324DT.

<u>**CERTIFICATE OF SERVICE**</u>

I certify that the foregoing Plaintiff's Cross-Motion for Summary Judgment, is being filed, *via* the Court's ECF system, on Monday, August 23, 2004, and that it will be served on the following counsel of record, by first class mail, postage prepaid, on Tuesday, August 24, 2004:

Eric C. Grimm (P58990)
**CALLIGARO & MEYERING, P.C.**
20600 Eureka Road
Suite 900
Taylor, MI 48180
734-283-2727
Email: <u>eric.grimm@cyberbrief.net</u>

**COUNSEL FOR PLAINTIFF,
J-RICH CLINIC, INC., d/b/a
REAL PURITY**

Douglas Seitz, Esq.
Sid Leach, Esq.
Laura Zeman, Esq.
Cynthia Pilotte, Esq.
**SNELL & WILMER, LLP**
400 East Van Buren
One Arizona Center
Phoenix, AZ 85004-2202
602-382-6000

Herschel P. Fink, Esq.
Honigman, Miller, Schwartz & Cohn
660 Woodward Avenue
Suite 2290
Detroit, MI 48226-3583
313-465-7000

**COUNSEL FOR DEFENDANTS
PHILOSOPHY, INC., BIOTECH, INC.,
COSMEDIC CONCEPTS, INC., d/b/a
PHILOSOPHY, QVC, INC.,
TARGET, INC, d/b/a MARSHALL
FIELD'S, DRUGSTORE.COM, INC.,
NORDSTROM, INC., and SEPHORA**.


____/s/ Eric C. Grimm_____